J. A. HOLLINGSWORTH ET AL. v. J. S. FOWLKES.

No. 138.

1. **Fact Case — Bona Fide Purchaser.** — See facts showing a bona fide purchase as against equities which may have existed between the vendor and the claimants against him by estoppel; grounds of estoppel being the pointing out by the grantor of a line subsequently ascertained not to be the true line.

2. **Actual as Against Constructive Possession.**—Controversy as to dividing lines between two surveys. Owner of survey on the east had actual possession by his tenants, who cultivated the land. The owner of the survey on the west had extended fencing across the land in dispute to connect with fences owned by the owner on the east, and with his consent. *Held,* that the extension of lines of fence did not affect a purchaser for value from the owner of the survey on the east, whose tenants were cultivating the land.

3. **Possession as Affected by Recorded Deed.**—The record of a deed from one in possession destroys the effect of such possession as notice of any title. The record controls the usual effect of possession. See facts.

4. **Same—Case Adhered to.**—Eylar v. Eylar, 60 Texas, 319, adhered to, holding that the record of a deed from a tenant in possession avoids the effect of such possession if held under any other claim.

APPEAL from Tom Green. Tried below before Hon. J. W. TIMMINS.

This is a fact case, and the annexed map will aid in understanding the facts, which are sufficiently set out in the opinion.

*H. C. Fisher,* for appellants.— 1. The fence mentioned in the first assignment of errors, between Nasworthy's and Lackey's lands (the same as pointed out by Lackey to Hollingsworth), is the recognized and established line between appellee's land and that of appellants; and Lackey at time of his sale to appellee was estopped, as against appellants, from asserting claim to the land in controversy. Houston v. Sneed, 15 Texas, 308; Cooper v. Austin, 58 Texas, 496; Smith v. Russell, 37 Texas, 253; Davis v. Smith, 61 Texas, 21; Davis v. Mitchell, 65 Texas, 624; Hefner v. Downing, 57 Texas, 580; Floyd v. Rice, 28 Texas, 343.

2. The appellants, at and before the time of appellee's purchase from Lackey of the lands in controversy, had actual and notorious and exclusive possession of the land in controversy. Talliaferro v. Butler, 14 S. W. Rep., 191; Porter v. Miller, 76 Texas, 597; Mainwarring v. Templeman, 51 Texas, 209; Weisgerber v. Wisner, 21 N. W. Rep., 331; Watts v. Connelly, 13 N. W. Rep., 82; Ellscott v. Pearl, 10 Peters, 432; Gale v. Shilloch, 29 N. W. Rep., 666; Allen v. Caldwell, 20 N. W. Rep., 693; Bullock v. Rouse, 22 Pac. Rep., 919; Sheerer v. Cuddy, 24 Pac. Rep., 713; McDow v. Rabb, 56 Texas, 160; Webb Rec. Title, secs. 228–238.

3. The possession of Nasworthy under his contract with Rackley and Hollingsworth, and by virtue of his sale to them of the lands sued for, was adverse to the title of Lackey in survey 815, and such possession was notice to appellee of said adverse claim, and was notice of the title of Rackley and Hollingsworth. Houston v. Sneed, 15 Texas, 308; Watkins v. Edwards, 23 Texas, 449; McGloin v. McGloin, 70 Texas,

633; Mullins v. Wimberly, 50 Texas, 463; Mainwarring v. Templeman, 51 Texas, 213.

*Otto Lerch* and *D. D. Wallace*, for appellee.—1. Appellants having failed to show by evidence that they were induced to change their position for the worse by reason of the representations claimed to have been made to them by Lackey as to where the line was between surveys 815 and 816, or that he acquired any corresponding rights thereby, did not show title by estoppel in pais to the land in suit; and this being the only title set up to defeat appellee's legal title, the court did not err in decreeing the land to him. Bridges v. Johnson, 69 Texas, 717; Hefner v. Downing, 57 Texas, 580; Tucker v. Smith, 68 Texas, 482; Bige. on Estop., 556; 2 Pome. Eq., sec. 804.

2. The possession of Nasworthy by tenant of survey 816, at the time appellee purchased the land in suit from Lackey, was not adverse to that of Lackey, and was no notice to appellee of the rights of Hollingsworth and Rackley, if any they had, by virtue of the declarations to them made by Lackey as to the boundary line when they contracted to purchase. Cameron v. Ronnell, 53 Texas, 238; Mullins v. Wimberly, 50 Texas, 213; Wright v. Lasseter, 71 Texas, 640; Love v. Breedlove, 75 Texas, 649; Edwards v. Brown, 68 Texas, 333.

STOREY, L. J., SR., SPECIAL JUSTICE.—Appellee brought this suit in the District Court of Tom Green County against J. A. Hollinsworth, J. J. Rackley, and John R. Nasworthy, as an ordinary action of trespass to try the title to 79.36 acres of land, a part of survey number 815, situated in said county.

Appellants plead general demurrer, general denial, and not guilty.

William Lackey was made a party defendant, but he filed a disclaimer and no further notice was taken of him.

A jury was waived, and the case was tried by the court. The judge filed his conclusions as to the law and facts, and rendered judgment for the plaintiff Fowlkes for the land sued for, except a strip 23 varas wide, found to be a part of survey number 816.

From this judgment the defendants appealed, and assigned a number of errors attacking the conclusions and judgment of the court.

The facts are substantially these: In the forks of Middle Concho River and Spring Creek are situated three surveys, numbers 814, 815, and 816. Number 814 is located immediately in the forks of these streams, number 815 is immediately west of number 814, while survey number 816 is immediately west of and adjoining survey number 815.

The land in controversy is a part of survey number 815, and is a strip along the west line of that survey 232 varas wide.

In 1884 appellant Nasworthy purchased surveys numbers 814 and 815

from Joseph Wiley, who pointed out to him a large marked pecan tree on the bank of the river as the northwest corner of survey number 815. Nasworthy improved his land, and built a fence beginning at this pecan tree and running south through the prairie on what he erroneously supposed to be the west line of survey number 815.

In October, 1886, Nasworthy sold and conveyed surveys numbers 814 and 815 to William Lackey, and pointed out to him the same pecan tree and wire fence as the corner and west line of survey number 815. Lackey put the land in cultivation up to this fence. In March, 1888, Nasworthy purchased survey number 816, and then entered into a contract with Lackey, wherein it was agreed that Nasworthy was to fence survey 816, and Lackey was to put it in cultivation and under irrigation, when they were to then sell it and divide the profits.

About April 9, 1888, Lackey, acting for Nasworthy, showed the land to appellants Hollingsworth and Rackley as what he supposed to be survey number 816 of 160 acres, and they stepped off from the wire fence so as to see about how far the survey would go west from the fence. Lackey told appellants that Nasworthy would make the deed, and they all went to San Angelo, where Nasworthy lived, to see him, and Lackey told Nasworthy that appellants wanted the land.

Nasworthy, Hollingsworth, and Rackley then entered into a written contract for the sale and purchase of the 160 acres survey number 816; or as Nasworthy expresses it in his testimony, in speaking of the description as contained in the contract, "I think it was 160 acres out of survey number 816;" and provided that at some future time Nasworth was to convey the land to Hollingsworth and Rackley, for which they were to pay Nasworthy a house and lot in San Angelo at $1000 as part payment, and the balance in cash. Nasworthy was to fence the land and put as much of it in cultivation and under irrigation as he could by the 1st of January, 1889, and for the land so put in cultivation and under water he was to receive $20 per acre, and for the balance he was to receive $3 per acre.

This contract was never put upon record, and appellee knew nothing of its existence until long after his purchase of surveys 814 and 815. About July, 1888, Nasworthy had survey number 816 surveyed off so as to ascertain where to place his fence, and then for the first time they learned that the land in controversy was in fact a part of survey number 815; and thereafter Lackey claimed the land in controversy as his own, and he and his tenants put a portion of it in cultivation.

By Lackey's consent Nasworthy run his fence across this strip of land and joined to the wire fence around Lackey's farm, and the cross-fence (the old wire fence) was permitted to go down so that surveys numbers 816 and 815 were practically under the same enclosure. Nasworthy built a house in the enclosure on survey number 816, but made no improvements on the land in controversy, except to run his fence across it to join

with the old wire fence, by Lackey's consent, and thereby saved the cost of a string of fence.

While in this condition Lackey sold and conveyed numbers 814 and 815 to the appellee, Fowlkes; took him upon the ground and showed him the true dividing line between surveys numbers 816 and 815, as well as the land he was cultivating on this strip, and without any knowledge of any controversy about the line, purchased the land. The consideration paid by Fowlkes to Lackey for surveys numbers 814 and 815 was $5000 cash and the assumption by Fowlkes of the payment of a mortgage for $7000, given by Lackey before Nasworthy bought survey number 816, and for the payment of which the land in controversy was undoubtedly bound. This the court below held was equivalent to payment in full by appellee.

On January 1, 1889, Nasworthy made appellants Hollingsworth and Rackley a special warranty deed to 160 acres of land lying immediately west of the old wire fence, including the land in controversy, in consideration of the $1000 and two notes to be paid in one and two years. From the evidence before us we suppose this deed did not say upon what survey the land conveyed was situated, except it ran west from the wire fence, and that will include part of both numbers 815 and 816.

It seems that neither the appellants Hollingsworth and Rackley nor the appellee, Fowlkes, knew at the time they bought that there was any controversy about the line, and neither of them at the date of the trial had actually paid all of the purchase money. Nasworthy still had the house and lot conveyed to him by Hollingsworth and Rackley for the cash payment of $1000, and they had never paid their two notes, and he was a party to this suit.

It is contended here, as in the court below, that appellee is and was estopped from setting up any claim to the land in controversy, because of the fact that Lackey, acting for Nasworthy, pointed out the same tree and line for the west line and corner of number 815 that he, Nasworthy, had pointed out to Lackey when Lackey purchased of him, and that Hollingsworth and Rackley bought to that line so pointed out by Lackey.

It seems that the legal title to survey number 816 was still in Nasworthy until long after the true line was discovered, and until Lackey set up claim to the land as his own. Nasworthy was the vendor of both Lackey and Hollingsworth and Rackley. He contracted in writing with Hollingsworth and Rackley to convey to them in the future " 160 acres out of survey 816," and from the price he was to pay, $20 per acre for land to be put in cultivation, and other facts in the case, it does not appear that he was to give only a quitclaim or special warranty deed. He fenced the entire survey 816, with the 79½ acres in controversy, and then executed to Hollingsworth and Rackley, after the controversy arose, a special warranty deed to 160 acres, including the land in controversy.

Or in other words, Nasworthy being the vendor of both Lackey and Hollingsworth and Rackley, executed to Lackey a warranty deed to surveys numbers 814 and 815, and afterwards gave appellants a special warranty deed to 79½ acres of survey 815.

Survey 816 was fenced and put in cultivation prior to January 1, 1889, the date of the deed to appellants Hollingsworth and Rackley, and the evidence fails to show that it is not as good land in every respect as the strip of land in controversy, and fails to show that Hollingsworth and Rackley will be injured in the least if they are compelled to take their 160 acres all on survey 816, which Nasworthy had a right to convey; whereas appellee would be injured the value of the 79½ acres if appellants recover; and as it has not been shown that appellants have been injured by this mutual mistake of Nasworthy and Lackey, we can not think appellee is thereby estopped from claiming the land in controversy. Besides, we can not say that he is not an innocent purchaser for value. Appellants had no deed or contract on record when appellee bought and recorded his warranty deed. His vendor was in actual possession and cultivating the land when he bought, and the true dividing line was pointed out to him, and all this before appellants had parted with anything of value, and before they received their special warranty deed from a man who knew he did not own the land.

The judgment of the District Court is affirmed.

*Affirmed.*

Delivered June 28, 1893.

Chief Justice FISHER did not sit in this case.

### ON MOTION FOR REHEARING.

STOREY, L. J., SR., SPECIAL JUSTICE. — In appellants' motion for rehearing it is insisted that we should hold that appellee was estopped from claiming the land in controversy by reason of the acts of his vendor, Lackey, in pointing out the land in controversy to appellants as the property of their vendor and codefendant, Nasworthy, from whom they purchased after such pointing out. They also contend, that appellee was not an innocent purchaser, because the strip of land sued for was at the time of purchase from Lackey inside of the enclosure of Nasworthy, and that Lackey was not in possession when appellee bought of him.

Upon these points the facts are as follows:

1. It is admitted that the land in controversy is a part of survey 815. On October 20, 1886, the defendant Nasworthy conveyed surveys numbers 814 and 815 to William Lackey, and pointed out to him a marked pecan tree and string of fence as the northwest corner and west line of said survey 815. In this he was mistaken; the true line was 232 varas

west of that string of fence.   On March 11, 1888, Nasworthy bought survey number 816, containing 160 acres, from one Leach, which is immediately west of and adjoining survey number 815.   At that time neither Lackey nor Nasworthy knew of the mistake in the locality of the dividing line; they supposed the fence was upon the line, and no question had ever been raised about the locality of this line.   Nasworthy then agreed with Lackey, that if he would put number 816 in cultivation and under irrigation, they would sell the survey and divide the profits.

On April 9, 1888, appellants Hollingsworth and Rackley applied to Lackey to buy the land, and Lackey pointed out the land to them as Nasworthy's land, saying that the fence was the dividing line between the surveys, and went with them to see Nasworthy at San Angelo, and told him that these men wanted the land, and that he had pointed out the land to them, beginning at the fence.   They and Nasworthy agreed upon terms in writing, in which Nasworthy agreed to sell to them "*160 acres out of survey number 816*," and put all he could in cultivation and under irrigation by January 1, 1889, when he would make the deed, in consideration of which Hollingsworth and Rackley agreed to pay him $20 per acre for all land he put in cultivation and under water, and $3 per acre for the balance, Nasworthy to take as part payment a house and lot in San Angelo at $1000.   The record does not show that the notes were ever executed or the amount paid.   The amount for which the notes were to be given could not be ascertained until the expiration of the time that Nasworthy had for putting the land in cultivation.   The language used by both Nasworthy and Hollingsworth is very similar.   Nasworthy says: "They were to give me their notes for balance of the purchase money." Hollingsworth says: "We deeded him the house and lot, and were to give our notes for the balance of the purchase money."   This contract or agreement to sell between Nasworthy and Hollingsworth and Rackley was dated April 9, 1888, but was never put upon record, nor does the statement of facts show whether Nasworthy was to give a quitclaim or warranty deed.   But two witnesses, Nasworthy and Potter, say that the agreement called for survey 816.

On January 1, 1889, Nasworthy made a special warranty deed to Hollingsworth and Rackley for 160 acres, beginning at the fence and tree, so as to include the land in controversy.   About July or August, 1888, Nasworthy and Lackey had survey 816 surveyed, so as to see where to put the fence, and then for the first time found the true dividing line between surveys 816 and 815, showing the land in controversy to be on 815.   From that time Lackey claimed the land as his own, and his own tenants cultivated the land in controversy that year.   One of them, Corascus, testified that no one except Lackey's tenants cultivated any of the land in suit that year.

We think it is probably true that Nasworthy's tenants cleared up a por-

tion of the land in the fall, when Lackey forbade them doing any more, saying that it belonged to appellee.

On the 16th day of October, 1888, after he had twice been upon the land and had the true dividing line pointed out to him, the appellee, Fowlkes, bought the surveys 814 and 815 from Lackey, taking his warranty deed therefor, and as consideration paid cash $5000 and assumed the payment of a mortgage on the land of $7000, dated in 1887, and due January 1, 1892; at the date of the trial this mortgage has not been paid off, because not due.

When appellee, Fowlkes, went upon the land to look at it and to close the trade for it, he found the old dividing fence, a three-wire fence, down, so he drove over it in several places in his buggy. The true line was pointed out to him. He found Lackey's tenants in actual possession of the strip of land; he saw no one else in possession. Never heard of any other claim to or controversy about the line until February, 1889; nor had ever heard of his vendor, Lackey, pointing out the fence to appellants as the dividing line. Nasworthy was in possession of survey 816, and if it can be said that he was in constructive possession of the strip of land when appellee bought, it is undoubtedly true that Lackey, by his tenants, was in actual pedal possession of the land in controversy.

Appellant Hollingsworth had no right to the possession of survey 816 until January, 1889. Nasworthy's occupancy was his own possession until January, 1889; then, under his unrecorded contract, he was to surrender possession and execute a deed to Hollingsworth and Rackley. Whatever right they had to the land or to survey 816 was a secret, of which the public had no notice, and of which appellee had no intimation whatever.

With these facts before us, we can not hold appellee to be estopped by the acts of his vendor, and we must hold him to be an innocent purchaser for value. If it can be said that Nasworthy, and not Lackey, was in possession of this strip of land when appellee made his purchase, we would still have to affirm the judgment under the facts of this case.

It is true that many cases can be found in which it is held that possession is notice of what title the possessor has, but it is not always true. In all cases where this rule is applicable, the language of the court must be understood with reference to the facts of the cases in which the rule is announced.

The law requires all conveyances of title to land to be evidenced by writing, and to be recorded in the county clerk's office for the protection of innocent purchasers and creditors. In this case the public record of deeds in Tom Green County, where this land is situated, showed a warranty deed on record from Nasworthy to William Lackey, conveying the land in controversy, and no other instrument in the least contradicting or throwing suspicion upon it. And when appellee went upon the ground

he found Lackey's tenants in actual possession. If Nasworthy was in constructive possession by reason of his fence, we can not say it was sufficient to override the notice of actual possession.

We think the true rule in such cases as these is laid down by our Supreme Court, for the first time, in the case of Eylar v. Eylar, 60 Texas, 319, 321. In that case, Judge Stayton, after referring to the law requiring the registration of land titles, says:

" Such being the case, can it be said, even if possession is sufficient in all cases to put purchasers upon inquiry, that such inquiry is not prosecuted sufficiently far when the person who desires to buy examines the records of the county and finds on record a deed from the person in possession to the person who offers to sell, and who under that deed asserts title.

" If the inquiry is prosecuted to the highest source which the law of the land declares shall exist for the determination of title, and to the source which the parties have created as the highest evidence of their respective rights, can it be true that it is further necessary to examine sources inferior, and make inquiry as to whether or not there are claims, or even rights, in others not evidenced as the law requires, or otherwise the purchaser be charged with constructive notice of secret vices in the title which he buys?

" To so hold, we are of the opinion, would be to strike at the very foundation of the policy upon which registration laws rest."

In the case from which we quote Judge Stayton, J. F. Eylar and wife conveyed their land to O. A. Eylar, and O. A. Eylar conveyed it to Ann A. Eylar. J. F. Eylar remained in possession, and contended that his deed to O. A. Eylar was intended by them as only a mortgage. Ann A. Eylar had no notice of this secret understanding that the deed should only be a mortgage. The court below charged the jury that J. F. Eylar's possession was sufficient to put a purchaser upon inquiry, and in the opinion rendered by Judge Stayton this charge was held, under the facts of that case, to be error, and the judgment was reversed.

In that case, as appellants contend in this, the grantor remained in possession. That is, it is contended that J. R. Nasworthy, who sold and conveyed surveys numbers 814 and 815 to William Lackey, remained in constructive possession of a part of number 815; while J. F. Eylar, in that case, remained in actual possession of the house and lot deeded by him to O. A. Eylar; the evidence of the possessor's right in each case being a secret and contradictory to their warranty deed on record.

Judge Stayton concludes his argument upon that branch of the case by saying: " We are of the opinion, under the facts in this case, that a purchaser from O. A. Eylar was not bound to inquire of the appellees [J. F. Eylar] what right they had in the land; that the inquiry was sufficiently prosecuted; prosecuted as far as a prudent man, having a due regard to

the rights of others, and to his own protection, would be bound to prosecute it, when he looked to the record and there found that O. A. Eylar was declared by the very persons in possession to be the true and absolute owner of the land.''

Judge Stayton cites a number of authorities to sustain the doctrine so ably laid down by him in that case.

And so say we in this case. If Nasworthy was really in constructive possession of the land when appellee purchased from Lackey, the record showed that he had, by his warranty deed, conveyed it to Lackey, and as Lackey's tenants were cultivating the land, surely appellee would not be required to inquire of Lackey's vendor whether or not he had any secret or unrevealed rights not disclosed by the record.

The motion for rehearing is overruled.

Delivered January 5, 1894.

Chief Justice FISHER did not sit in this case.