WARE et al. v. PERKINS et al.    (No. 805.)

(Court of Civil Appeals of Texas. Amarillo. June 5, 1915.)

1. DEEDS ⬠114 — PROPERTY CONVEYED — PLATS.

     The owner of certain lands conveyed 200 acres thereof, described as beginning at a certain point, thence west to the west line of the survey, thence south a number of varas sufficient to make 200 acres. Subsequently the owner platted the land and set aside a certain block as covering the 200 acres so conveyed, but it contained in fact more than 200 acres. *Held*, that the mere fact that the owner platted such land did not place title to the entire block in the grantees of the 200 acres.

     [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329, 388; Dec. Dig. ⬠114.]

2. FRAUDS, STATUTE OF ⬠70 — ESTABLISHMENT OF BOUNDARIES—PAROL AGREEMENT.

     That a boundary may be established by a parol agreement, it is essential that there be doubt and uncertainty as to its true location.

     [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 112; Dec. Dig. ⬠70.]

3. FRAUDS, STATUTE OF ⬠158 — ESTABLISHMENT OF BOUNDARIES—ORAL AGREEMENT—EVIDENCE.

     In a suit to recover real estate, evidence *held* sufficient to sustain a finding that the parties agreed to locate a certain line bounding plaintiffs' purchase, and that such location was not made to settle a doubt or dispute.

     [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 373–376; Dec. Dig. ⬠158.]

4. ESTOPPEL ⬠55—ESSENTIALS — RELIANCE ON ACT.

     In a suit to recover a strip of land included in a block intended to represent plaintiffs' purchase, which in reality contained more than the amount purchased, that defendants, who originally owned the land, had platted it and established lines showing the extent of plaintiffs' purchase, did not constitute an estoppel as against defendants, where the purchase was not made in reliance on the lines as fixed, or improvements put upon the land with reference to such lines.

     [Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 136–141; Dec. Dig. ⬠55.]

5. APPEAL AND ERROR ⬠559—RECORD—BILL OF EXCEPTIONS.

     That bills of exception are included in the statement of facts, and not brought up in the record outside thereof, does not prevent consideration of the assignments of error.

     [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2483–2489; Dec. Dig. ⬠559.]

6. BOUNDARIES ⬠35—ESTABLISHMENT—EVIDENCE.

     In a suit to establish a boundary, evidence that no two surveyors could run a line and reach the same point was properly excluded, since it would not have tended to prove a consideration for the agreed boundary, where there was no evidence that either party gave that as reason for their agreement.

     [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 153–155, 157–159, 163, 165, 177–183; Dec. Dig. ⬠35.]

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by H. P. Ware and others against J. J. Perkins and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Fitzgerald & Cox, of Wichita Falls, and Davis & Davis, of Gainesville, for appellants. John C. Kay, of Wichita Falls, for appellees

HUFF, C. J. H. P. Ware and 16 others, as plaintiffs, instituted suit against L. N.

Lochridge, J. J. Perkins, W. E. Norton, and P. H. Pennington, as defendants. The suit is over a small strip of land out of the Louisa Netherly survey, in Wichita county. The plaintiffs set up specifically the facts as claimed by them entitling them to the land.

The Louisa Netherly survey was owned by L. N. Lochridge, consisting of 786 acres. On the 27th day of November, 1912, L. N. Lochridge executed a written contract to T. W. Owen and G. E. Wilson, with the customary rights of ingress and egress to oil and gas, in and under 200 acres of the Louisa Netherly survey in Wichita county, which contract was registered March 25, 1913, in said county. The land conveyed by the contract is described as follows:

"Beginning at a point 1,500 varas from its N. E. corner on the E. line of said survey; thence W. to the W. line of said survey; thence south a number of varas sufficient to make 200 acres of land"—reciting sufficient consideration.

Owen and Williams, on the 11th day of March, 1913, for a recited consideration of $250,000, assigned their interest in said contract to the Forest Oil Company, together with other leases, which assignment was registered in Wichita county March 25, 1913. For a purported consideration of $10,000, the Forest Oil Company assigned to A. J. Bartrug, so far as it related to 20 acres in the form of a square out of the southwest corner of said 200 acres. This assignment is dated August 20, 1913, and recorded December 29, 1913. Afterwards on December 26, 1913, in an assignment which was registered December 29, 1913, Bartrug, for a recited consideration of $500, transferred and assigned to B. F. Taylor his right to the gas and oil in and under said 20 acres, under said contract; and afterwards, on the 29th day of December, 1913, Taylor, by assignment, for a recited consideration of $600, transferred and assigned to the plaintiff, J. A. Watkins, a half interest in his right to the oil and gas upon and under said 20 acres. It is admitted that said last contract was transferred to Watkins in trust for the other plaintiffs in this case as beneficiaries. On the 30th day of December, 1913, by written contract registered January 3, 1914, L. N. Lochridge, for a consideration of $100, granted to W. E. Norton an option to lease 10 acres or less as he might choose out of the Louisa Netherly survey, except 25 acres out of block No. 5, L. N. Lochridge plat, and the land leased previous to that date to E. B. Stevens and the Carson Oil Company. It was provided in the option that Norton should pay at the rate of $100 per acre therefor and a royalty of one-eighth of the oil. Afterwards, by written contract dated January 21, 1914, and recorded January 28, 1914, Lochridge granted and conveyed to J. I. Perkins and W. E. Norton the gas and oil under a strip of the said Netherly survey described as follows:

A strip 12 varas wide and 990 varas long, more or less, off the south side of block No. 4, as per the L. N. Lochridge plat of 786 acres out of the Louisa Netherly survey, abstract No. 240, and being all the land out of said block No. 4, not heretofore covered in a lease of 200 acres to Owen and Wilson, being at the N. E. corner of block No. 5, per the L. N. Lochridge plat of said land; thence north 12 varas, more or less, to the S. E. corner of said 200 acres heretofore leased to Owen and Wilson; thence west along the S. line of said 200 acres 990 varas; thence S. 12 varas, more or less, to the N. W. corner of said block No. 5; thence E. 990 varas to the place of beginning, containing two acres more or less.

This strip is the land in controversy. In consideration of this lease the grantees agreed to pay the grantor $200 yearly in advance for each gas-producing well and to furnish him free of charge gas therefrom for domestic purposes and a royalty of one-fifth of the oil obtained from said land.

Before the lease contract to Owen and Wilson, heretofore set out, Lochridge platted the tract of land leased by him, but did not subdivide it. His son, who lived at San Antonio, appears to have been something of a civil engineer, and he requested his son to plat the land into blocks of 80 and 100 acres each, except the 200 acres theretofore leased to Owen and Wilson. His son made a plat or sketch of the several blocks in his office in San Antonio, numbering them 1, 2, 3, 4, 5, 6, 7, and 8. Block No. 4 is marked on the plat 200 acres, but is shown to be 1,152 varas long, north and south and 990 varas east and west. At the time of making the lease Owen and Wilson knew nothing of the plat, if in fact it was then in existence, and the lease to them was made without reference to the plat. Block 5 of the plat lies immediately south of block 4. It is shown by the introduction of several lease contracts that Lochridge recognized the north line of block 5 in conveying certain parcels of land to various owners, calling for the north line or corners of that block. The Netherly survey of land is shown to be 990 varas wide east and west. After the land was platted by Lochridge's son in San Antonio, and the plats sent to his father, Lochridge employed a surveyor to run out the blocks in accordance with the plat, and at the corners of the several blocks he or the surveyor placed stakes or marked the corners of the several blocks. Some time after this, just when it is not shown, Lochridge met Owen and told him that he had placed stakes at the corners of block 4, which represented the 200 acres leased to him and Wilson, and that it was under the fence and where he could find it.

Owen says that he found the stakes and claimed the south boundary of his 200-acre lease to be at those stakes. Owen further testified that he had been thinking of surveying the land out until he was informed by Lochridge that he had made the survey, and that he considered the stakes the corner of his "stuff," and that Lochridge told him that he had put the stakes for the corners of the 200 acres. These stakes were placed by Lochridge after the lease to Owen and Wilson had

been made and after the making of the map. Owen did not purchase by the map, and knew nothing about the map. Lochridge never pointed out the stakes to Owen, but simply told him that it was under the fence and where he could find it. Wilson, the partner of Owen, knew nothing about the map or stakes, and testified that they had just leased 200 acres. Lochridge did not know, he says, at the time that there was an excess in block 4, and that he did not intend to lease more than 200 acres to Owen and Wilson. A surveyor was employed to run out the 200 acres, and says that 1,152 varas by 990 varas is not exactly 200 acres; it is 202.03 acres.

We find that the 20 acres sold to Taylor and his assignor is simply described as 20 acres out of the southwest corner of 200 acres conveyed to Owen and Wilson. Afterwards Taylor had 20 acres surveyed, and began at a small stake for the southwest corner of block 4, and ran the 20 acres out in a square in the southwest corner. Taylor's testimony shows that he did not purchase the 20 acres at the time of his purchase with reference to the plat; that he had only seen it once, and that he purchased it simply as 20 acres out of the southwest corner of the 200-acre tract; and that his contract only called for the land so situated. He knew that the appellees, Norton and Perkins, were purchasing the option to the 12x990 vara strip, and in fact took the acknowledgment to the contract to them, and says that he saw these men buy the lease from Lochridge, and never said a word about his lease covering the same, and "supposed we had what was coming to us," and did not think he had a right to say anything, and that he had never tried to get the 20 acres north of the strip, and that he did not suppose there was anything in the way of their getting the 20 acres somewhere there. It seems that Mr. Watkins, one of the plaintiffs, was also present and knew of the contract, and saw the parties purchasing the 12-vara strip when they went to work. These parties, appellees, put down five wells on the strip and obtained oil therein. The appellants and those knowing of the work said nothing to them about owning any portion of the strip, but permitted them to proceed with the work until after oil was obtained, when this suit was instituted. Lochridge testified that he supposed, in making the plat, that the line between block 4 and 5 was a common line of the two blocks, and that block 4 only covered the 200-acre lease.

Appellants' first assignment is:

"The evidence shows that the line between the Owen and Wilson lease of 200 acres and block No. 5, as evidenced by the stake at the northeast and northwest corners of block No. 5, and the southeast and southwest corners of block No. 4, was an agreed and established line, and the court erred in not so holding."

The second assignment is:

"The court erred in not holding that the stakes placed by L. N. Lochridge at the common corners of block No. 4 and 5 control the division line between block 5 and the Owen and Wilson lease."

[1] As we understand, there is no controversy but that the lease to Owen and Wilson conveyed only 200 acres. The point the land leased was to begin and end is and can be readily ascertained. There is no controversy that the survey out of which it was conveyed is 990 varas wide east and west. The 200-acre tract was to be commenced 1,500 varas from the northeast corner of the Netherly survey, on the east line of that survey; thence running west from that point to the west line of that survey; thence south the number of varas sufficient to embrace 200 acres. The plat named block 4 on the map, which is platted so as to exclude the Owen and Wilson lease from other lands platted, is in excess of 200 acres about 2.03 acres. Its east and west boundary lines are about 12 varas, too long north and south for the Owen and Wilson lease. This fact was apparent upon the plat. The lease was made without reference to the plat, which at the time of the execution of the lease was not in existence. At this time, or afterwards, there was no controversy between the lessor and the lessees as to the point the south line should be placed. The lessor, Lochridge, voluntarily platted the Netherly survey and placed the stakes. The south line of the lease was not placed by agreement, or to settle a dispute, or because there was any uncertainty as to the length of the east and west boundary lines running north and south, in order to embrace the 200 acres. The line was not surveyed or stakes set to adjust any differences that had then arisen, or because there was any uncertainty. Placing the stakes at the point they were placed is the only cause for any uncertainty, and that does not produce uncertainty as to the true south line of the 200 acres, but as to whether it was the purpose of Lochridge to donate the lessees 2.03 acres of land. There is no conveyance in writing of this land, either as a sale, or as a gift; hence the statute of frauds prevents a recovery, either as a donation or as a sale. Under the pleadings and evidence in this case it may well be questioned whether this is a boundary suit in any sense of the word. The true location of the two tracts of land is not controverted, but apparently it is admitted that the Owen and Wilson lease does not include the land.

[2] The contention is that Lochridge having blocked the land, and set aside block 4 as covering the 200 acres leased, had the effect of placing the title in the lessees. This it did not do, unless Lochridge is estopped by some act or declaration of his. If, however, it is a boundary case, the facts and pleading show the true boundary is 12 varas north of where appellants are claiming. In order to establish the line where claimed by appellants, it must be either by agreement or estoppel. In order to the validity of a parol

agreement establishing a boundary, it is necessary that there be doubt and uncertainty as to its true location, and sometimes it is said an actual dispute between the parties. 5 Cyc. 932. In this case the trial court was authorized to find there was never any doubt, uncertainty, or dispute between the parties as to the true location.

"Where the parties knew where the divisional line was, such an agreement would not, it is said, be binding, because it would be a parol conveyance of land, and contrary to the statute of frauds." Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 23 Am. St. Rep. 340; Levy v. Maddox, 81 Tex. 210, 16 S. W. 877; Randleman v. Taylor, 94 Ark. 511, 127 S. W. 723, 140 Am. St. Rep. 141; Lewis v. Ogram, 149 Cal. 505, 87 Pac. 60, 10 L. R. A. (N. S.) 610, and notes thereunder, 117 Am. St. Rep. 151.

The parties hereto must be held to have known the east and west boundary to the 200-acre tract would be 1,140 varas, as called for in the lease, and not 1,152 varas, and that the description of the land in the lease would not include the 12 varas in dispute. It follows, therefore, they knew block 4 called for 12x990 varas more than the lease conveyed, and the plat relied upon gave appellants notice of that fact. We find no evidence of doubt, uncertainty, or dispute at the time of the alleged agreement; on the contrary, it is quite certain that the party making the map knew that block 4 was in excess of 200 acres and was too far south for the south boundary line of the 200-acre tract. There was no mutual concession made by the parties. The lessees were not contending for an extension beyond 1,140 varas.

[3] We do not believe the facts conclusively establish an agreement of any sort to establish the south line of the 200-acre strip at the point the stakes were driven. Owen did not accept in terms the survey, but only stated he did not survey the land, but that he claimed to the stake. This claim the evidence does not disclose he made to Lochridge; but, if the facts would warrant the conclusion that there was a meeting of the minds of the parties, they are sufficient, we believe, to have authorized the trial court to find that the parties agreed to locate the true south line of the 200 acres, and that such was the purpose of the parties, and not for the purpose of settling a doubt or dispute. The fact is uncontroverted that the stakes are not on the true line, and, if placed there for the 200 acres, were so placed through a mistake as to its true south boundary. The intention of Lochridge was to set apart in one block the 200 acres. This was his instruction to his son to so plat the land, and he says he did not know that block 4 contained an excess over that amount. Owen's testimony indicates that his purpose was simply to get his 200 acres, and that he did not survey it out because of the stakes set by Lochridge, but Owen claimed they were at his south corners. We do not think it clear

from the evidence that there was an agreement to establish the line at the stakes set by Lochridge, but it is inferable that the purpose of the parties was to find and locate the true south line. It is unreasonable to believe that the intention of Lochridge was to give to Owen and Wilson land they never bought; all that was intended by the parties was to put 200 acres in one block, which the deed called for. Davidson v. Pickard (Civ. App.) 37 S. W. 374, 376; Schraeder v. Packer, 129 U. S. 688, 9 Sup. Ct. 385, 32 L. Ed. 760; Weston v. Meeker (Civ. App.) 109 S. W. 461, on page 467; Wiley v. Lindley (Civ. App.) 56 S. W. 1001; Higginson v. Schaneback (Ky.) 66 S. W. 1040; Brewer v. Boston, etc., 5 Metc. (Mass.) 478, 39 Am. Dec. 694.

[4] The third assignment is to the effect that the court erred in not holding appellees estopped by the establishment of lines by Lochridge upon which the parties had acted. There was no plea of estoppel as such; there is a plea that appellants purchased without notice that the line was elsewhere than at the stakes. The evidence and pleading do not show that appellants purchased and relied upon the lines fixed by the stake. They put no improvements upon the land, or placed any with reference to the supposed lines, and there is no allegation or proof that they would lose anything by reason of the mistake, or that they relied upon the map as showing their land or its situation. The field notes of their land do not call for these stakes, or for block 5 south of block 4. There was no representation which induced them to change their position from what it was before. Love v. Barber, 17 Tex. 312. The evidence shows that appellant will get the quantity of land contracted for out of the southwest corner of the 200-acre tract. There is nothing to show that its value is not as great as it should be if extended 12 varas south. There is nothing to show any difference, except that added by labor and capital of the appellees. This improvement or work appellants knew was being placed on the strip of land sued for, and no protest was made until oil was obtained. They did not claim to have purchased it. One of the appellants, if not two, was informed of the vacancy, and that Lochridge claimed it, and that appellees were purchasing it, and Taylor took the acknowledgment to the lease, thereby being fully informed of the contention made by appellees. It has not been shown the appellants have been injured by the mistake, or that the lands they get are not as good as those they contended they were getting. Hollingsworth v. Fowlkes, 6 Tex. Civ. App. 64, 22 S. W. 1110, 24 S. W. 708; Davidson v. Pickard (Civ. App.) 37 S. W. 374; Hunter v. Malone, 49 Tex. Civ. App. 116, 108 S. W. 709.

Our Supreme Court has held, where land is pointed out to a purchaser as being the land proposed to be sold, and he could have ascer-

tained the true facts by getting a surveyor to run it out, having failed to exercise such measures as were then at hand, he cannot claim the land by estoppel. Clevenger v. Blount, 103 Tex. 27, 122 S. W. 529. The lease under which appellants claim, as well as the map giving the dimensions of block 4, were sufficient to notify them that the block was 12 varas too far south for the south line of the 200 acres, out of which latter survey they were purchasing 20 acres.

[5] The fourth, fifth, and sixth assignments of error assert the court was in error in excluding certain testimony. The bills of exceptions are contained in the statement of facts. There are no bills independent of the statement of facts. The appellees object to the consideration of these assignments, because the bills of exceptions were not presented and brought up in the record outside of the statement of facts. They assert that bills of exception to the exclusion of evidence cannot be so brought up in the statement of facts. The objection of appellees to the assignments will be overruled. As we understand, our Supreme Court has ruled that such practice is not in violation of the rules for taking bills of exceptions. Stephens v. Herron, 99 Tex. 63, 87 S. W. 326. These assignments, however, will be overruled.

[6] The fact that a surveyor would testify no two surveyors could run a line and reach the same point would not have tended, we think, to prove a consideration for an agreed boundary. Neither party to the purported agreement gave that as a reason for the agreement. Such evidence could make any declaration as to a line a consideration for an agreement, if such a fact, when testified to, would be a consideration, whether parties thereto considered it as a reason for the contract or not. The other testimony excluded would not bind Lochridge or appellees, if it had been admitted (Davidson v. Pickard [Civ. App.] 37 S. W. 374), and would not have estopped either of them.

We find no reversible error, and the case will be affirmed.