## J. B. HUNTER V. ABIGAIL MALONE.

### Decided February 5, 1908.

**1.—Evidence—Interrogatory not Leading—Harmless Error.**

· To the question, "If you state that you once surveyed said Hill tract of land, then say whether or not at the time you made the survey the outer boundaries of said tract had not been recently cut out and surveyed by another party; and if yea, then state, if you know, who made such survey?" the witness answered, "R. W. Fenner, county surveyor of Bee County, Texas, surveyed the boundary lines of said Hill survey prior to the time I surveyed and subdivided it. I found the lines recently cut out, and followed them." Held the question was not leading.

**2.—Same—Leading Question—Harmless, when..**

Overruling an objection to a leading question is harmless error when other evidence to the same effect has been admitted ·without objection. Interrogatories considered, and held not leading, or if leading the admission of the answers to the same was harmless error because other testimony to the same effect had been admitted without objection, and because there was no statement in the brief showing that the testimony was material.

**3.—Same—Leading Question—Definition.**

It seems that the definition of a leading question as "one which admits of an answer simply in the affirmative or negative, or which, embodying a material fact, suggests the desired answer," is not always accurate. But where a question contains a series or group of facts and admits of a complete answer by a bare affirmation or negation, it is ·clearly leading.

**4.—Boundary—Agreement not Binding, when.**

Where there is no dispute as to the boundary between contiguous owners of land, and one of them points out a line which he mistakenly supposes to· be the dividing line, in the absence of facts which would constitute estoppel, the owner pointing out the line is not bound thereby.

**5.—Same.**

An agreement as to the dividing line between the owner of one tract and a tenant of the other owner, is not binding on either owner in the absence of authority in the tenant to make the agreement.

**6.—Same—Acquiescence.**

Mere acquiescence in the position of a boundary line, when no one has been induced to change his situation, for a period short of the longest period of limitation, is insufficient to estop the acquiescing party or raise the presumption of an agreement.

**7.—Limitation—Payment of Taxes.**

Although the payment of taxes is not necessary to support the ten years statute of limitation, still the failure to do so after the expiration of that period is a significant circumstance in ascertaining the character of the claim asserted.

**8.—Same—Possession—Definition—Case Criticized.**

In a charge upon the ten years' statute of limitation the court defined peaceable and adverse possession as that which was "actual, continuous, visible,

notorious, distinct, hostile—that is, adverse—fair and open, and of such a character as to indicate clearly a claim of ownership in the occupant." Held, correct, and not subject to the objection that the statutory definition gives the essential element constituting title by limitation as peaceable and adverse possession, and that the court should not undertake to amplify said terms. The case of Logan v. Meads, 43 Texas Civ. App., 477, criticised.

**9.—Evidence—Admissions—Competency.**

Admissions against interest made to a third party and not to the antagonist in the controversy or to some one representing him, are competent evidence, and cannot be avoided by the claim that they were made by way of compromise.

Appeal from the District Court of Bee County. Tried below before Hon. James C. Wilson.

*Dougherty & Dougherty* and *R. W. Stayton,* for appellant.—Where adjoining land owners agree that a certain fence or line is the boundary line between their surveys, such agreement settles all questions between them as to the extent of their ownership or those claiming under them. Dalby v. Booth, 16 Texas, 565; Brown v. Johnson, 73 S. W., 49; Browning v. Atkinson, 46 Texas, 608; Houston v. Sneed, 15 Texas, 309; Edwards v. Smith, 71 Texas, 159; Davis v. Mitchell, 65 Texas, 625; Cooper v. Austin, 58 Texas, 494.

Where respective owners of adjoining tracts agree that a boundary line drawn at the wrong place shall be the division line, long acquiescence therein establishes it as such division line. Harrell v. Houston, 66 Texas, 280; Cooper v. Austin, 58 Texas, 494.

*Beasley & Beasley,* for appellee.—The evidence was insufficient to show any contract between Malone and Skidmore fixing the boundary line; moreover, there being no uncertainty as to the location of the line and no dispute with reference thereto, and it clearly appearing that at the time Skidmore did not own the Hill tract, and did not have authority from the owner thereof to make such agreement, had such agreement been made it would not have been valid and binding on the parties and the court correctly refused the requested charge. Davidson v. Pickard, 37 S. W., 375; 5 Cyc., p. 932, and authorities cited; id., p. 934.

Plaintiff was not estopped from recovery of the land. Hefner v. Downing, 57 Texas, 576; Koenigheim v. Sherwood, 79 Texas, 511; Schunior v. Russell, 83 Texas, 96; Bohny v. Petty, 81 Texas, 524; Vogt v. Geyer, 48 S. W., 1100; Davidson v. Pickard, 37 S. W., 375; Stanus v. Smith, 30 S. W., 262; 17 Texas, 318.

The charge of the court on the issue of limitation was a proper one under the facts of the case. Satterwhite v. Rosser, 61 Texas, 171; Moon v. Cain, 77 Texas, 316, and authorities cited.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to 120 acres of land off the Delano survey of one-third of a league, instituted by appellee. Appellant pleaded not guilty, limitation of ten years, and answered specially that the Delano and John W. Hill surveys are contiguous to each other, and appellant deraigned title from F. O. Skidmore, who owned or controlled the Hill survey,

and that on December 20, 1877, the said Skidmore 'had a verbal agreement with F. J. Malone, the owner of the Delano tract at that time, whereby the boundary line between the two tracts was fixed and located, and said Skidmore in pursuance of the agreement built a fence upon the agreed boundary line where it has ever since remained; that said Malone at the time had a lease of the J. W. Hill survey and surrendered it to F. O. Skidmore, and Malone pointed out the line upon which the fence was placed, Skidmore paying for one-half of the fence and Malone for the remaining half. The contest was as to the true boundary between the two surveys. The cause was tried by a jury and resulted in a verdict and judgment for appellee.

Appellee showed a perfect chain of title to the land from the original grantor, and appellant has no title to the land unless he and those under whom he claims had perfected a title by the agreement as to the boundary line or by limitation of ten years. The land without doubt is a part of the Delano survey and appellant, and those under whom he claims, produced no conveyance to any part of that survey. No improvements had been placed on the land except the fence. The Hill survey calls for the line of the Delano survey on the northwest. The jury was justified in finding that no binding agreement as to the boundary line of the Hill and Delano surveys was ever made by the owners of those tracts, and that limitation of ten years was not shown.

The second assignment of error complains of the action of the court in overruling objections to the following question to, and answer of, R. W. Archer: "If you state that you once surveyed said Hill tract of land, then say whether or not, at the time you made the survey, the outer boundaries of said tract had not been recently cut out and surveyed by another party; and if yea, then state, if you know, who made such survey?" Answer: "R. W. Fenner, County Surveyor of Bee County, Texas, surveyed the boundary lines of said Hill survey prior to the time that I surveyed and subdivided it. I found the lines recently cut and followed them." The only objection urged in this court is that the question was leading. We do not consider that the question was leading in any part of it, but if it was, it only went to the matter of another survey prior to the one made by the witness, which fact had been proved both by Archer in answer to the 10th interrogatory and by other testimony. It did not lead as to the person who made the prior survey. There is nothing stated that would show that the answer of the witness was material, in fact there is no statement except a copy of the question and answer and grounds of objection.

The eighth interrogatory to R. W. Archer, a witness for appellee, was as follows: "State whether or not, at the time you surveyed the Hill tract, the boundaries thereof, as established by a previous survey recently made, were not pointed out to you by some person or persons, and, if so, state who they were?" The answer was: "O. S. Skidmore was present with me at the time of the survey and pointed out to me the lines run by R. W. Fenner." The interrogatory was objected to on the ground that it was leading, and the answer

on the ground that it was not responsive. It might, with much reason, be concluded that a question was not very leading that failed to elicit a responsive answer from a witness. In San Antonio & A. P. Ry. v. Hammon, 92 Texas, 509, it is intimated that the definition, that a leading question is "one which admits of an answer simply in the affirmative or negative, or which, embodying a material fact, suggests the desired answer," is not accurate. The court does not attempt to give what it considered an accurate definition, but holds that "where a question contains a series or group of facts and admits of a complete answer by a bare affirmation or negation, it is clearly leading." The question under consideration would not be leading under that statement. To a previous question the witness had answered that the boundaries of the Hill land had been surveyed a while before he surveyed them, which was fully shown by other testimony, and the witness was not led as to that fact, and there was nothing to indicate to the witness the name of the person who pointed out the boundaries to him. It was testified by Fenner that he surveyed the land and marked the boundaries for O. S. Skidmore two or three months before Archer surveyed it or subdivided it. The only material matter called for by the interrogatory was as to who had pointed out the boundaries marked by Fenner. There is no statement under the assignment which tends to show the materiality of the answer of the witness.

The third assignment of error assails the course of the court in overruling objections to the following interrogatory addressed to R. W. Archer and his answer thereto: "State whether or not, in running the outer boundaries of the Hill tract, your work conformed to the survey that had been just previously made; and were not the boundaries and corners of the tract located and fixed in conformity with such previous survey?" Answer: "Yes, the survey made by me conformed to the one made by R. W. Fenner; I did not fix the corners; I found them fixed and subdivided the tract to conform thereto." The answer made by the witness does not of itself show its materiality, and no attempt is made, by a statement, to indicate that it had any materiality whatever. The witness swore to every fact elicited in answer to this interrogatory in answer to other interrogatories to which no objections are urged in the brief of appellant.

The fifteenth interrogatory to R. W. Archer, which was objected to as leading, is as follows: "State whether or not when you made the survey of the Hill tract you were accompanied by O. S. Skidmore, who showed you the boundaries of the tract as surveyed and established by Mr. Fenner; and did not you adopt as correct Fenner's location of the lines and corners of the tract, and base your work in subdividing the Hill tract thereon?" To which the witness answered: "When I made this survey I was accompanied by O. S. Skidmore, and he showed me the lines as run by R. W. Fenner, which I took as correct and made the survey in accordance therewith. I did adopt the lines as shown me by him." It is plain that the interrogatory was leading, and standing alone would undoubtedly constitute such error as would necessitate a reversal of the judgment,

but the answer, when taken in connection with the answers to proper interrogatories, could have had no injurious effect. In answer to other interrogatories the witness had stated that O. S. Skidmore was with him when he made the survey and pointed out the lines run by Fenner, that the lines were cut out and corners fixed and that he had followed them. The interrogatory did not elicit a single fact that had not been brought out in response to other questions. The materiality of the evidence can not be ascertained from anything found in the brief. There is not even a statement that it was material.

The fifth assignment of error complains of the following interrogatory and answer thereto on the ground that the interrogatory was leading: "State whether or not at the time you surveyed the Hill land, O. S. Skidmore and F. O. Skidmore knew where the boundary line between the Delano and Hill surveys, as fixed and recognized by you and Mr. Fenner, was, and whether or not he knew at that time the fence running from the east corner of the Delano in a southwesterly direction was not on said line; and whether or not, at that time, the said Skidmore did not know that a portion of the Delano survey was in his pasture?" Answer: "O. S. Skidmore knew it; but I do not know whether or not F. O. Skidmore then knew it. O. S. Skidmore knew these facts, but I don't know whether or not F. O. Skidmore then knew them." In response to the interrogatory immediately preceding the one to which objections are urged, the witness testified to the same facts, and there were no objections to that interrogatory or answer, and it follows that the answer to the interrogatory complained of did not injure appellant, if it should be held that the question was leading.

As bearing on the second, third and fourth assignments, it may be stated that in answer to the thirteenth interrogatory, to which no objections were incorporated in any assignment of error, the witness Archer stated: "The line between the Hill and Delano surveys was plainly marked by R. W. Fenner and followed by me. The N. W. corner of Hill and the east or N. E. of Delano was evidenced by a stake and a bearing, or call, to a point north of it, and I think the two westerly corners of the Hill were marked, but I do not recall now." To the fourteenth interrogatory, against which no assignment is presented, the witness answered: "The common line of these surveys was known to O. S. Skidmore, but I do not know that it was known to F. O. Skidmore."

F. O. Skidmore testified that some time in 1886, F. J. Malone owned the Delano tract and held a lease on the adjoining John W. Hill survey; that Malone transferred the lease to the witness and when the latter desired to build a fence between the leased land and the Delano tract, Malone pointed out the line between the two tracts, and on that line the witness put the fence, where it has remained ever since. Afterwards, in 1889, F. O. Skidmore bought the Hill survey. The testimony does not show that the owner of the land at the time knew anything about what Malone said about the boundary line or that he knew that the fence was placed where it was. The land when sold to F. O. Skidmore called for the east

corner of the Delano and for its line as the west line of the Hill survey. Under these facts appellant sought to have the jury instructed that if F. O. Skidmore and F. J. Malone had agreed upon the line where the fence was placed, those claiming under Malone could not recover the land, although it was not a part of the Hill survey but was a part of the Delano tract. If the respective owners of the Hill and Delano surveys had verbally agreed upon a certain line as the boundary between their tracts it would have been binding upon them, their heirs and assignees, but no such agreement was proved. F. O. Skidmore was only a tenant, even if he occupied that position, of the owner of the Hill survey and had no authority whatever to bind him. The owner of the land made no agreement, and if Malone pointed out the line between the two tracts it was a unilateral agreement binding on no one. Under the circumstances there was no boundary fixed by agreement. Wright v. Lassiter, 71 Texas, 640.

It could not be maintained that a tenant would have the authority, by reason of his tenancy, to bind his landlord by agreements as to the boundaries of his land, for such a theory, put into practice, would overturn all rules of agency and place the landlord at the mercy of his tenant. It would be a still more unjust rule, if possible, to allow a subtenant, with whom the landlord had no dealings, to bind him in agreements as to the boundaries of his land. If the tenant could bind the landlord in a case where the agreement as to a boundary secured more land to the landlord than he was entitled to, he could bind the landlord by an agreement that deprived him of a part of his land. There could not have been any binding agreement between F. J. Malone and F. O. Skidmore at the time the latter said it was made, and the court would have been justified in refusing to submit such agreement to the jury even though it had not been submitted in the general charge.

Even if F. O. Skidmore had been authorized to agree on a boundary, there was no proof of such agreement. All that Skidmore testified was that Malone had pointed out the line, but they had no agreement that it should be placed at that point. Davidson v. Pickard (Texas Civ. App.), 37 S. W. Rep., 374.

There is nothing in the evidence that tends to show that F. O. Skidmore was induced to buy the land by the act of Malone in fixing the boundary where he did, for he bought and sold the land by the acre, and he, and those to whom he sold, got every acre that they were entitled to and no improvements except the fence were put on the land.

It is true that an agreement as to a boundary line may be implied from the acts and long acquiescence of a party in regard to it, and compliance with it should be enforced when, without such enforcement, injury would result to others who have been induced to buy by such acts evincing acquiescence, or where the owners of adjacent tracts have been induced to make valuable improvements, which would not have been made but for such implied agreement. Somebody must have been misled to their injury in order to constitute estoppel, and we have seen no authority that holds that mere

acquiescence in a boundary line, when no one has been induced to change his situation, for a period short of the longest period of limitation, would be sufficient to estop the acquiescing person, or raise the presumption of an agreement. Harrison v. Boring, 44 Texas, 255; Hefner v. Downing, 57 Texas, 576.

The charge, which made the boundary between the Delano and Hill tracts turn upon an agreement between Malone and Skidmore, was properly refused for the reason, as before stated, that Skidmore made no agreement, and at the time of the alleged agreement could not have made one. It was nothing more at the best than Malone pointing out a line that he mistakenly thought was the boundary. No one acted to his hurt on that mistake. No one purchased the Hill tract by reason of that mistake, and no one lost by it. The only way in which acquiescence could possibly figure in the case would be in connection with limitation. If anyone, but F. O. Skidmore, ever heard of the agreement between him and Malone until the time of this trial, the record fails to disclose it.

The third charge requested by appellant is to the effect that if Malone pointed out a line as the boundary between the Delano and Hill tracts and thereupon Skidmore built his fence, and the fence was maintained, those acts would be conclusive between the parties, and the jury should find for appellant. That charge did not make the finding of the jury depend on an adverse holding for the statutory time, but bases it on the pointing out of the boundary line by Malone. In other words the charge is, that if the line was pointed out by Malone and a fence was placed there by Skidmore and maintained there by him and his assignees, Malone or those claiming under him would be estopped from claiming that the boundary was at any other place. We do not think that is the law, as hereinbefore stated. If Malone pointed out the line, it was not done in settlement of a disputed boundary, but was done by mistake and was only acted on to the extent of a fence being built. There was at no time an agreement between the owners that the line pointed out was the true boundary. There was no intention to deceive, but it was a clear mistake, which did not result in injury to anyone. Acquiescence in the mistake for the period of ten years coupled with an adverse holding would give title by limitation, but that is not what the requested charge stated. No time was set forth therein. The law as to acquiescence was fully submitted in the charge of the court, which was more favorable, we think, to appellant than the facts demanded.

The charge, whose refusal is complained of in the ninth assignment of error, assumes that a binding agreement was made between Malone and Skidmore, and is erroneous in other respects and was properly refused. It assumes the authority of Skidmore to agree on the boundary between Malone's land and that of another person without any authority on the part of Skidmore to represent the latter person.

The court did not err in refusing the fifth charge requested by appellant. The law in regard to ten years limitation was clearly given in the charge of the court. The requested charge was upon

the weight of the evidence. Appellant, nor anyone of those under whom he claims, ever assessed the property for taxation or paid any taxes thereon, although possession of the land was claimed for twenty years. "Although the payment of taxes is not necessary to support limitation of ten years, still the failure to do so after the expiration of that period is a significant circumstance in ascertaining the character of the claim asserted in such cases." Warren v. Frederichs, 83 Texas, 380. While this circumstance would have been of no value perhaps if appellant and his vendors had held the land all the time under the belief that it was a part of the Hill tract, still the proof tended to show that in 1890, before a title by limitation could have been perfected, and fifteen years before this suit was instituted, a survey had been made and F. O. Skidmore and O. S. Skidmore, parties through whom appellant deraigned title, knew that the land was not a part of the Hill, but a part of the Delano tract, and yet it was not assessed nor taxes paid on it. Those facts were circumstances which weakened the claim of adverse possession, and the court did not err in refusing, as requested by appellant, to instruct the jury that such facts should not be considered.

The thirteenth, fourteenth and fifteenth assignments of error are on the questions of acquiescence and estoppel and are disposed of by our views on assignments hereinbefore considered.

Under our view of the case the charge of the court, as to agreement between Malone and Skidmore not being binding if it "was made only in the attempt to find such true line and not for the purpose of fixing and establishing the true line," could not have injured appellant.

The court defined peaceable and adverse possession as one that was "actual, continuous, visible, notorious, distinct, hostile—that is, adverse—fair and open, and of such a character as to indicate clearly a claim of ownership in the occupant," and through the seventeenth assignment of error it is claimed that the charge was erroneous. The only proposition under the assignment is: "The statutory definition gives the essential element constituting title by limitation, peaceable and adverse possession, and the court should not undertake to amplify such terms." There is no claim that the charge was upon the weight of the evidence, or that the evidence was of a character that the use of the numerous adjectives might have influenced the jury, but the naked claim is that no words describing the possession should have been used except "peaceable and adverse." That contention must be overruled.

Peaceable and adverse possession undoubtedly involve and include in their meaning action that is "actual, continuous, visible, notorious, distinct, hostile, fair and open," and in the definitions given in the statute all the words, or their equivalent, are used, except perhaps "notorious," and all of them are fairly inferable therefrom. Arts. 3148, 3149. We have seen no case in which the words used, and they are often used, have been criticized except the case of Logan v. Meads, 43 Texas Civ. App., 477. In that case a similar charge was condemned, in an opinion on rehearing, by the Court of Civil Appeals of the Second District, but it was done on the ground that

it was harmful under the facts of that case; in other words, that it was on the weight of evidence. Doubtless that was the objection urged to the charge in that case, and the charge is condemned on that ground. An attempt is made by the court to distinguish the Logan-Meade case from that of Beall v. Evans, 1 Texas Civ. App., 443, on the ground that the contest in the latter case was between tenants in common. We fail to appreciate the distinction, and especially so as the court in that case did not confine its ruling to that class of litigants. The court said: "To set the statute in motion under the ten years limitation, the possession must be visible, distinct, notorious, continued and hostile for the full period of ten consecutive years while the statute was in force; it must be an actual, visible appropriation of the land, under claim of right inconsistent with the rights of the true owner, and must disseize the owner, and the claim must be of the land in suit." The "peaceable and adverse possession" prescribed by the statute is the same in all cases, whether between tenants in common or other parties, the only difference being that in the case of tenants in common the adverse possession of the land must be shown to extend to the whole of it, as the presumption must be overcome that the one tenant is holding for the other as well as himself.

The language of the charge has been used with approval in a number of opinions of the Supreme Court. In the case of Satterwhite v. Rosser, 61 Texas, 166, the court said: "It has been said that such possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (i. e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." In Bracken v. Jones, 63 Texas, 184, it was said: "Possession, to be of any value to vest a right or bar a remedy, must be actual, continued, visible, notorious, distinct and hostile. It must be fair and open, as the statute was not made to serve the purpose of artifice and trick." In Evans v. Templeton, 69 Texas, 375, the language of Satterwhite v. Rosser is quoted and approved. In the case of Hurley v. Lockett, 72 Texas, 262, the charge of the trial court contained the statutory definitions of peaceable and adverse possession, and the defendant requested a charge to the effect that to gain title by limitation there must be "not only actual possession, but also visible, continuous, notorious, and hostile possession of the strip of land in controversy, against the defendant, and possession of such a character as to indicate unmistakably an assertion on their part of a claim of exclusive ownership in them as against the defendant Hurley." The court held that the requested charge should have been given. The language of Satterwhite v. Rosser and Bracken v. Jones is also approved in Mhoon v. Cain, 77 Texas, 316. The authorities cited would seem to justify the charge.

If, however, the propriety of the decision in Logan v. Meade is conceded, which is based on the facts of that case, the decision does not aid the proposition that no words descriptive of possession must be used in a charge except "peaceable and adverse." No such ruling is made in the Logan-Meade case, the criticism therein seeming

only to extend to the use of the word "notorious" and the statement that the possession must be such as to "disseize the owner."

The twentieth interrogatory to R. W. Archer was not leading. The question did not suggest the answer, and could not have been answered by yes or no.

The nineteenth assignment of error is in effect the same as the seventeenth, the proposition being that the court should have correctly defined peaceable and adverse possession, and that it was erroneous to submit a charge that is contradictory, confusing and unintelligible. Those may be excellent abstract propositions, but no effort is made to apply them in this case. The charge is not open, however, to the abstract criticisms.

The twentieth assignment of error which complains of the refusal to give a special charge requested by appellant is not well taken. The charge does not correctly present the doctrine of estoppel, which is attempted by it.

John Malone was introduced as a witness by appellee and testified to conversations he had with appellant, in which the latter recognized the rights of appellee and offered to buy the land. There was some uncertainty in his mind as to when the conversation occurred, although he testified as to other facts tending to show that it was before the suit was brought. Appellant denied making an offer to pay for the land in controversy. Appellant, after Malone had testified, sought to have the testimony stricken out, because the conversation took place with appellant after the suit was filed and in the way of compromise, and because the conversation took place after the title had been perfected by limitation and because it appeared that the witness "was not acting in the capacity of agent or attorney of the plaintiff, or had authority to make or entertain any proposition of compromise or purchase in relation to said land." It would seem that the last objection would dispose of the objections to proof of the conversation on the ground that it was held by way of compromise, because if the witness had no authority to make a compromise and he was not used as an intermediary, we fail to see that there was any compromise pending. A party can not shield himself from the effect of his admissions by claiming that they were made in the way of compromise when made to some third party and not to the antagonist in the suit or some one representing him. The court, at the instance of appellant, instructed the jury that if the title by limitation was perfected when the conversation took place it should be disregarded, as it could not affect the title. Appellant has no just cause of complaint.

There was evidence tending to show that there had not been an adverse possession of the land for the statutory period. There were breaks in the possession, and the true boundary of the land was fixed by both F. O. Skidmore and O. S. Skidmore, and admissions were shown, going to prove that they did not claim the boundary to be where it is now claimed to be. The judgment is affirmed.

*Affirmed.*

Application for writ of error dismissed for want of jurisdiction.