GRAVES v. GRAVES et al.    (No. 5786.)

(Court of Civil Appeals of Texas.    San Antonio.
Feb. 7, 1917.    Rehearing Denied
March 14, 1917.)

1. ADVERSE POSSESSION ⊛114(2)—FINDINGS OF COURT—EVIDENCE.

In an action of trespass to try title, evidence examined, and *held* sufficient to support findings of court that plaintiff had been in possession of only the easterly half of a strip of land four feet wide for more than ten years.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 685, 686.]

2. ADVERSE POSSESSION ⊛109 — OFFER TO PAY FOR DISPUTED LAND—DEFENSE.

An offer of plaintiff to pay defendant $500 for land, title to which was in dispute, will not divest her of title acquired by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 629–635.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by Smithie Graves and others against Amos Graves. Judgment for plaintiffs, and defendant appeals. Affirmed.

George W. Huntress, Maury Maverick, and Houston & Woodhull, all of San Antonio, for appellant. Ball & Seeligson and Chas. W. Trueheart, all of San Antonio, for appellees.

MOURSUND, J. On July 15, 1915, appellees, Mrs. Smithie Graves and Mrs. Ollie Graves Martin, the latter joined by her husband, sued appellant in trespass to try title, seeking to recover a strip of land 4 feet wide and about 160 feet long between the dwellings of appellees and appellant, which front on Oakland street in San Antonio, Tex. Appellees pleaded the five and ten years' statute of limitations. Appellant interposed a plea of not guilty, and the cause was tried without a jury. At the conclusion of the evidence, it was agreed that the record title was in appellant, and the sole issue to be decided was whether appellees had established title under the statute of limitations of ten years. Judgment was rendered in favor of plaintiffs for a strip 2 feet wide, being the easterly half of the 4-foot strip sued for.

[1] The findings of fact filed by the court are rather long, especially as they include field notes, so we will only state the substance thereof in so far as may be necessary to dispose of questions raised upon this appeal. He found that plaintiffs and those from whom they deraign title have had and held for more than ten years prior to the 1st day of September, 1914, actual, peaceable, and adverse possession of the easterly half of the strip of land in controversy, cultivating, using and enjoying the same for the purposes for which it was susceptible. He also found that there was much evidence that such possession extended to the entire 4-foot strip, instead of only to 2 feet thereof, but he did not find that the preponderance of the evidence was to that effect.

Appellant contends that the evidence does not support the finding that plaintiffs had actual, peaceable, and adverse possession of the easterly half of the strip for more than ten years prior to September 1, 1914, while appellees by cross-assignments contend the court erred in not so finding as to the entire strip.

We conclude that the evidence supports the finding of the trial court on which he based his judgment awarding plaintiffs the easterly half of the strip in controversy. There is some uncertainty with regard to the location of the line to which Dr. Graves, Sr., and plaintiffs claimed, which line is shown to have been marked for a considerable period of time by a board placed in the ground. The witness Dixon testified that it was in the center of a flower bed which was 4 or 5 feet wide. Mrs. Martin, one of the plaintiffs, testified the flower bed was about 4 feet wide, but said she was not quite certain. In answer to a question of the court whether the bed now is as it formerly was, she said she could not say positively. She fixed the length of the flower bed at 20 feet, while Suchy testified it was 30 or 40 feet long. Suchy was equally liberal in estimating the width of the bed, for he fixed it at 8 or 10 feet, and we believe he is the only witness who thought it had been that wide. At the time of the trial it was about 4 feet wide. Mrs. Smithie Graves, one of the plaintiffs, also testified to the fact that the board divided the flower bed so that the workmen for each owner would know how far to go in their work. She said:

"That board put a certain rose bush in our yard. The 2x4 run right on my brother's side,

but the rose bush was inside. * * * The rose bush is in the east line of this strip, and the 2x4 is right alongside of it on the west."

The testimony just quoted is consistent with the theory that the 2-foot strip allowed plaintiffs by the court would give them the rose bush on which this witness bases her testimony to a large extent. The witness Jackson, who worked for Dr. Graves when he first moved to the place, thought that he made the flower bed. He did not undertake to say how wide a bed it was. He testified with regard to the present flower bed without making any comment to the effect that there was any change in size.

We have carefully considered all of the testimony, and conclude that the same is of such nature as to justify the court in coming to the conclusion that plaintiffs did not show by a preponderance of the evidence that Dr. Graves, Sr., had claimed the entire 4-foot strip. In this connection, it is, of course, to be noted that we are passing on this question, not as an original one for us to decide, but under the rules of law applicable to findings made by trial courts.

The conclusions of fact announced above dispose of and require the overruling of all cross-assignments and of appellant's first four assignments of error.

[2] Appellant's fifth assignment of error complains of the refusal of the trial court to find:

"That during the year 1914 the plaintiffs recognized the line of defendant to be where the fence testified about is located, being the present fence line of defendant, and agreed to purchase the 4 feet in controversy from the defendant."

The testimony relied on is that of Mrs. Martin, to the effect that, after she returned and found that defendant had erected a fence, she had a conversation with him in which he tried to convince her that the fence was on the correct property line, and at one time had been worked up until she thought possibly it was; that she offered him $125 per front foot, or $500, for 4 feet. The conversation took place in December, 1914, or later, at a time when, under the finding of the court, the bar of the statute of limitation was complete. If what Mrs. Martin said can be construed as a recognition of defendant's title, it could only be considered as a circumstance in connection with all the other testimony of this plaintiff and the other witnesses on the question of adverse possession, and the court, after hearing all of the testimony, held that adverse possession was shown. She could not, after title by limitation had been acquired, divest herself and the other plaintiff of title by making such offer. Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Whittaker v. Thayer, 58 Tex. Civ. App. 282, 123 S. W. 1138; Wickizer v. Williams, 173 S. W. 289; Barratt v. McKinney, 93 S. W. 241;

Hunter v. Malone, 49 Tex. Civ. App. 116, 108 S. W. 709. The assignment is overruled.

The judgment is affirmed.