**BELL v. HAYNES et al.**

No. 3597.

Court of Civil Appeals of Texas. Amarillo.

April 29, 1931.

Joiner & Cook, of Plainview, and L. G. Mathews, of Floydada, for appellant.

Kinder & McMath and Williams & Day, all of Plainview, for appellees.

HALL, C. J.

This is an action in trespass to try title filed May 12, 1930, by Mrs. Flora Haynes and T. Brown Haynes against the appellant Bell, to recover a part of section 47 in block R in Hale county, Tex.

Bell answered by a plea of not guilty, interposing the statutes of limitation of three, five and ten years.

In reply to this plea, Mrs. Flora Haynes, who held the land as trustee for T. Brown Haynes, replied, pleading infancy on the part of T. Brown Haynes, alleging that he inherited the property from his father, who died when T. Brown Haynes was about two days of age and that T. Brown Haynes, from the 17th day of March, 1905, until the 17th day of March, 1926, was a minor, and during all of said time had title to said land until he conveyed it to Mrs. Flora Haynes to be held in trust for him, and, because of his infancy, the statutes of limitation did not run against him.

There was a trial to a jury, and, in response to two special issues submitted by the court, the jury found as follows:

(1) We do find from a preponderance of the evidence that the survey made by W. J. Wil-

liams located the true boundary line upon the ground along the west side of survey No. 47 in block R.

(2) We do not find from a preponderance of the evidence that the defendant Bell or those under whom he holds have had peaceable possession and adverse possession of the land in question under inclosure, cultivating, using, and enjoying the same continuously for more than ten years beginning prior to the death of T. Haynes, father of the plaintiff T. Brown Haynes.

Based upon this verdict, the court rendered a judgment in favor of the plaintiffs.

■ The rights of the parties depend upon whether Bell has established title to the strip of land in dispute under the provisions of the statute of limitation of ten years (Rev. St. 1925, art. 5510). The burden rested upon him to establish his defense.

It appears that in 1898 Mrs. N. W. Haynes, under whom Bell claims by mesne conveyances, bought section 48 from the state, and in November, 1901, she had section 47 leased and both fenced in one inclosure. That about the last-named date J. T. Haynes, whom we assume was not then married, bought section 47, and some time between that date and the summer of 1902 built a fence dividing the two sections, which was 132 varas east of the true line between the two sections. Bell insists that his title by limitation extends to this fence. Section 47 lies east of and adjoins section 48. J. T. Haynes died March 19, 1905, leaving the land, which was his separate estate, to his son, who was then two days old. Thereafter, in July, 1908, Mrs. N. W. Haynes sold section 48 to W. B. Armstrong. In April, 1910, Armstrong had said section surveyed, and as a result of this survey it was first ascertained that the division fence was located 132 varas too far east.

The substance of appellant's first proposition is that, where the evidence shows that Mrs. N. W. Haynes was in peaceable adverse possession of the land in question from 1898 until July 15, 1908, and from the fall of 1901 or early winter of 1902 up to the time J. T. Haynes built the fence and to the time section 48 was conveyed to W. B. Armstrong, and claimed all land up to the fence built by T. Haynes, which separated sections 47 and 48, places Armstrong in possession of all of the land up to the fence, and where Armstrong held and claimed the land peaceably and adversely up to the fence until 1916, making a period of more than ten years of peaceable and adverse possession, said possession beginning to run against the father of plaintiff T. Brown Haynes, such possession vests title in the defendant, and, a finding by the jury for plaintiffs being without evidence, the court should have set aside the jury's findings and granted defendant a new trial.

It will be seen that the contention is that there is no evidence to sustain the jury's finding to the effect that Bell and those under whom he claimed had not acquired title under the provisions of the ten years' statute. The deed to Bell is dated June 13, 1929, and was recorded four days thereafter. Mrs. N. W. Haynes testified that section 48 was awarded to her in 1898, and some time thereafter she leased section 47 and fenced the two sections together. That in November, 1901, J. T. Haynes, who is also designated as T. Haynes in the record, bought section 47, and some time thereafter the dividing fence was built, but she could not remember the date. She asserted, however, that the fence was built by J. T. Haynes before his death. She stated that section 48 was the land she owned and was entitled to 640 acres under her award and did not at that time claim to be entitled to any more land than the state had awarded her, which was 640 acres more or less. She further stated that she did not intend that the fence should be placed on J. T. Haynes' land and did not try to get any of his land and did not suppose he wanted any of her section. The record shows at that time there had been no actual surveys that the witnesses could remember, and that section lines were run off by using a wagon wheel with a string tied around it. According to the testimony of Mrs. N. W. Haynes her possession extended from the time the fence was built until she sold to W. B. Armstrong in July, 1908, a period of approximately six years. It further appears that in 1910 Armstrong had the land surveyed by Surveyor Whitis, and, according to his field notes, the fences were too far east and Armstrong moved his west fence farther west and his south fence farther south in the early part of 1911, and since then had held under his inclosure more than 640 acres of land. He testified the only reason he was claiming up to the fence was because he considered it the true line, and that he was not claiming the land in question by limitation and did not intend to claim it by limitation. That he never claimed anything by limitation. He further stated, however, that he claimed to the fence on the east side as the line. He admitted saying to Mrs. Haynes that Whitis' work was in controversy, and that he wished she or some one else would have a lawsuit so they could find out whether it would stand up in court. He stated that he moved his west fence somewhere in 1910 or 1911. That when he moved his fence farther west, True Rosser had the land lying west of him under lease. That he told Rosser that he did not want any piece of land belonging to anybody else, but wanted to get on his true line. His testimony shows that, after he had Whitis run the lines of his section, he moved his south and west lines out, taking in more land to conform to Whitis' survey, but did not agree to the east line as fixed by Whitis, and

claimed that he thought the east fence was the true boundary.

Mrs. Flora Haynes testified that she remembered when Armstrong had the land surveyed and shortly thereafter she spoke to him about moving her line over to where the survey had shown it should be. That Armstrong said, according to the surveys, that some of the people thought that the state would have a strip of land on the east side of her place, and, if it was ever proved that the strip belonged to the state, that he had to buy the strip. That he wanted to do the right thing about it and he thought that would be right. That such conversation occurred within less than a year after the survey was made. The reason he gave for not wanting the fence moved farther west was that he wanted the lines located before any fences were moved.

True Rosser testified that he had a section of land lying immediately west of section 48 under lease at the time Whitis made the survey, and that Armstrong moved his fence over west and south in accordance with the lines located by Whitis. "I told him that I did not know positively where my lines were and he said he had some experience in surveying and wanted to know where his lines were and wanted to get on the lines and was going to have them run out. He said he just wanted to get his true boundary and that he just wanted 640 acres of land and that was all he wanted. I carried the flag during that survey and I remember Armstrong said he was giving up good land on the east to take lake land on the west and it looked like bad business for him to have it run out and regretted that he had had it run out. That he did not intend to claim anybody else's land, just wanted 640 acres, and let the lines fall where they would."

The deeds introduced in evidence show that Mrs. Haynes conveyed to Armstrong section 48 in block R, and that when Armstrong conveyed to his sons W. F. and U. S., after the Whitis survey, he conveyed section 48 in block R, "containing 640 acres of land." That, when the son U. S. Armstrong conveyed to his brother W. F., he conveyed section 48 in block R, containing 640 acres, and, when W. F. conveyed to Bell, he described the land as section 48 in block R.

The appellees contend that the evidence is sufficient to have justified the jury in believing that J. T. Haynes did not erect the fence until the spring of 1902. That the Whitis survey was made in April, 1910, and that the jury was authorized to find that the conversation between Mrs. Haynes and Armstrong was immediately thereafter. That

Armstrong moved his fence west and made the declarations above set out to True Rosser in May, 1911, all within the period of ten years, which did not expire until in the spring of 1912.

■■ Under R. S. art. 5538, the running of the statute was suspended for twelve months, according to the record before us, from the death of T. Haynes. When Mrs. N. W. Haynes leased section 47 from the state, she held as lessee according to its true location on the ground, the fee remaining in the state, 2 Tex. Jur. 189 § 102, and limitation could not begin to run for or against any one until T. Haynes purchased that section from the state and built the division fence in the winter of 1901–1902. If it be admitted that this had the effect of putting the statute in operation, it had only run about six years when Armstrong purchased section 48. There is no contention that the fence which T. Haynes built between the sections was on an agreed line, nor is there any element of estoppel en pais in the record. It is apparent that T. Haynes built the fence under the mistaken impression as to where the true boundary line between the sections had been located upon the ground. Mere acquiescence for a period of time short of the longest period of limitation does not give title. Hunter v. Malone, 49 Tex. Civ. App. 116, 108 S. W. 709; Davidson v. Pickard (Tex. Civ. App.) 37 S. W. 374; Wiley v. Lindley (Tex. Civ. App.) 56 S. W. 1001; Weston v. Meeker (Tex. Civ. App.) 109 S. W. 461.

■■ The statute requires peaceable and adverse possession for the full period of ten years, and adverse possession means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another. The evidence, a brief statement of which we have hereinbefore given, does not show such hostile and adverse possession as the statute contemplates, either with reference to Mrs. N. W. Haynes or Armstrong. Houston Oil Co. v. Pullen (Tex. Com. App.) 272 S. W. 439; Odem v. Leahy (Tex. Civ. App.) 264 S. W. 218 and authorities cited. The declarations of Mrs. Haynes and Armstrong, disclosing their intent and bearing upon the issue of claim of title, are sufficient to defeat any effort to establish that their holding was hostile and adverse.

Because no other judgment could have been properly rendered upon the uncontradicted evidence, it becomes unnecessary for us to consider the remaining assignments, and the judgment is affirmed.