DUVAL COUNTY RANCH COMPANY et al., Appellants,

v.

Dan FOSTER, Appellee.

No. 13361.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 22, 1958.

Rehearing Denied Nov. 19, 1958.

———————

Perkins, Floyd & Davis, Alice, Otis Meredith, Houston, Frank C. Bolton, Jr., Dallas, William S. Clarke, Houston, for appellants.

Parker Ellzey, Lloyd & Lloyd, Alice, for appellee.

BARROW, Justice.

This is a trespass to try title suit and concerns a boundary question. Appellee, Dan Foster, brought suit against appellants, Duval County Ranch Company, hereinafter called Ranch, Magnolia Petroleum Company, and the Texas Company. The case involves the title to an undivided one-seventh of the oil, gas and other minerals, under a certain tract of about 125 acres of land, lying along the south and west boundaries of Survey 200 in Duval County, Texas, and being within the Survey but outside the Foster fence. Appellee, Dan Foster, showed record title to the property involved. The appellants depended upon stare decisis, res judicata, agreed boundary, acquiescence and recognition, estoppel and limitation. The case was submitted to a jury upon special issues and upon its findings judgment was rendered for appellee, Dan Foster. The minerals involved in this suit are under the same tract of land involved in Foster v. Duval County Ranch Co., Tex.Civ.App., 260 S.W.2d 103, ref. n. r. e., decided by this Court in 1953, opinion by Justice Pope. On page 106 appears a map or plat of the area involved, and it will be referred to for description and location. Appellee, Dan Foster, was not a party to that suit, although his mineral estate had been severed and conveyed to him long prior to the filing of that suit. In this opinion the X lines shown on the plat will be referred to as the fence line, and the double lines below and to the left of the fence line is the true survey line, and will be referred to as the true line.

All of the land involved is a part of the French system of surveys made by A. M. French in 1880. At the time of the French survey, the lands to the east, known as the Dix survey, and the lands to the west, known as the Luckett survey, had already been surveyed. French in making his survey between those senior surveys made mistakes in measurements, with the result that his block and the surveys involved contained excess lands, but no vacant lands. Duval County Ranch Co. v. Rogers, Tex. Civ.App., 150 S.W.2d 880 (see map, at page 882). The actual surface of the earth between the Luckett and Dix surveys was greater than French thought and was of a different configuration. The reason for this was that French made a mistake in measuring the east line of his survey with the result that instead of the east line and west line being equal, the east line of the French survey was actually shorter than the west line. He supposed that he could lay in a system of surveys having an approximately true east to west boundary line; but when it was discovered that the French system contained excess lands, the apportionment of the excess acreage resulted in a dislocation of the east to west lines.

French prepared his original field notes to Surveys 199, 200, 201 and 202 in 1880, as a result of an office survey. Those field notes make the south line of Survey 200 and the north line of Surveys 201 and 202 coterminous and common. In 1904 J. R. Foster, appellee's predecessor, made application to purchase Survey 200, and in 1913 the survey was patented to him under those field notes, as containing 640 acres.

In 1938 certain persons, not here involved, precipitated a land suit when they sought to purchase or lease from the State certain lands within the French block, on the grounds that they constituted a vacan-

cy. The lands here involved were among those claimed to constitute the vacancy. In the Duval County Ranch Company case, cited above, it was decided that those lands constituted an excess but not a vacancy. After that suit was concluded a resurvey of Survey 200 revealed that it contained 764.97 acres, rather than 640 acres. Foster, the owner, availed himself of the provisions of art. 5421c–1, Vernon's Ann.Civ.Stats., by causing corrected field notes to be filed for Survey 200 and paying for the excess; and on August 29, 1945, he received a deed of acquittance from the Commissioner of the General Land office. Survey 199, immediately north of the Survey 200, was owned by the Ranch, and on March 12, 1942, the Ranch had obtained a deed of acquitance by paying for an excess of 33.23 acres over the 640 acres recited in the original field notes and patent for that survey. The Ranch also owned Surveys 201 and 202, on the south boundary of Survey 200, and in 1948 the Ranch obtained deeds of acquitance to those surveys. The resurvey of Surveys 201 and 202 placed the true north line of those surveys along the true south line of Survey 200.

Appellants contend that the decision of this Court in Foster v. Duval County Ranch Co., supra, is stare decisis and also res judicata of the questions involved in this case. This contention is overruled. Under the doctrine of stare decisis the determination of a question of law by a court of ultimate resort becomes a part of the law of the state and a precedent governing the decision of subsequent matters involving the same point. The rule has reference only to questions of law, Horne v. Moody, Tex.Civ.App., 146 S.W.2d 505, 509, opinion by Justice Norvell, hence has no application to cases decided upon findings of fact. Res judicata is only binding on the parties to the suit and their privies.

In Foster v. Duval County Ranch Co., supra, the case was decided by the trial court on questions of fact. The Court of Civil Appeals affirmed the judgment of the trial court, and in so doing held that the judgment in that case was supported by the evidence. Although appellee, Dan Foster, at that time had title to the severed mineral estate which he now claims, he was not made a party to that suit and no judgment was rendered against him. We are of the opinion that Dan Foster is not bound by either the doctrine of stare decisis or res judicata. The only thing to which the doctrine of stare decisis applies is the court's location of the true boundary line of the survey, according to the record. Horne v. Moody, supra.

Appellants rely on acquiescence and recognition. In that connection, they contend that the owners on each side of the fence having acquiesced in and recognized it as the boundary from 1909 until the filing of this suit in 1955, said fence line became the established boundary as a matter of law. We cannot agree with that contention.

It appears from the record that Surveyor Hayes Dix, in 1904, ran part of the supposed south line of Survey 200 for J. R. Foster, using the field notes prepared by Surveyor French, which erroneously described the survey. Again, in 1909, Hayes Dix surveyed the entire line for Smith and Corkill, using the French field notes, at which time the fence was built. It is not disputed that all parties recognized the fence line as the boundary under the mistaken belief that it was the true line. In 1938, a man by the name of Rogers caused a survey to be made, claiming a vacancy between the surveys, when, for the first time, it was discovered that the previous surveys were in error, and that the fence line was not the true boundary. Following the case of Duval County Ranch Co. v. Rogers, Tex.Civ.App., 150 S.W.2d 880, by this Court, writ refused, Hayes Dix, in 1941 made a resurvey of the boundaries and discovered that there was an excess in Survey 200, belonging to J R. Foster, and in Survey 100, belonging to the Ranch, and at the same time estab-

lished the true boundary lines in dispute, at the places claimed by Dan Foster. This Court in Foster v. Duval County Ranch Co., Tex.Civ.App., 260 S.W.2d 103, writ refused, n. r. e., held such to be the true boundary lines as a matter of law, after which the parties purchased the excess from the State and received deeds of acquittance. It was after the resurvey that for the first time any of the parties knew where the true south and west boundaries of Survey 200 were located on the ground. The Ranch acquired its title through Smith and Corkill and Dan Foster acquired his title through J. R. Foster. Dan Foster's deed is dated October 25, 1944. In the conveyances to the Ranch and also to Dan Foster, none of the lands are conveyed by metes and bounds, the deeds call for the surveys by name and number.

The rule has been stated in 11 C.J.S. Boundaries § 81, p. 654, as follows:

"Recognition of, and acquiescence in, a line as the true boundary line of one's land, *not induced by mistake,* and continued through a considerable period of time, affords strong, if not conclusive, evidence that the line so recognized is in fact the true line, and it supports an inference or presumption that there has been an agreement fixing it as the true line." (Emphasis ours.)

While some of the decisions in Texas are not in harmony, we believe that the Supreme Court in Great Plains Oil and Gas Company v. Foundation Oil Co., 137 Tex. 324, 153 S.W.2d 452, 458, has settled the law in this State. In passing upon this precise question the Court said:

"Long acquiescence in a line is evidence from which it may be inferred that the parties by agreement established such line as the true line, and from such acquiescence a jury or a court may find that the line used is the true line. Bohny v. Petty, 81 Tex. 524, 528, 17 S.W. 80; Schunior v. Rus-

sell, 83 Tex. 83, 96, 18 S.W. 484; Note 69 A.L.R. pages 1430, 1480, 1515. But acquiescence in a line other than the true line will not support a finding of an agreement establishing the line as the boundary when there is no other evidence of agreement than acquiescence and when it is affirmatively shown that the use of the line resulted not from agreement but from a mistaken belief of the parties that it was the true line. Stier v. Latreyte, Tex. Civ.App. 50 S.W. 589; Hunter v. Malone, 49 Tex.Civ.App. 116, 108 S.W. 709; Gulf Oil Corporation v. Marathon Oil Company, 137 Tex. 59, 152 S.W.2d 711. Similarly, when the true location of the line is conclusively proven, mere acquiescence in another line in the mistaken belief that it is the true line will not support a finding that such other line is the true line. Buie v. Miller, Tex.Civ.App., 216 S.W. 630 (application for writ of error refused); Thompson v. Allen, Tex.Civ.App., 111 S.W.2d 791."

This rule has been followed by an unbroken line of authorities too numerous to cite here, and was adhered to by the Supreme Court in Gulf Oil Corporation v. Marathon Oil Co., 137 Tex. 59, 152 S.W. 2d 711, 714. See also, Disheroon v. Cox, Tex.Civ.App., 292 S.W.2d 379.

In the instant case the true location of the boundary line between Survey 200, the Foster land, and Surveys 201, 202, 206 and 262, the Ranch land, lying to the south and west of the Foster land, was conclusively established, and the evidence further conclusively shows that such acquiescence and recognition of the fence line resulted from the mistaken belief of all the parties that it was the true line. Great Plains Oil & Gas Company v. Foundation Oil Company, supra

 Appellants argue that acquiescence and recognition having continued beyond the period of time required by the stat-

utes of limitation, that the boundary was established as a matter of law. We cannot agree with this contention. Acquiescence and recognition are only evidence of an agreement fixing the boundary and support the inference or presumption that there has been such an agreement. 11 C.J.S. Boundaries § 81, p. 654. This inference or presumption does not apply to a case where such acquiescence and recognition are induced by mistake. Beal v. Earhart, Tex.Civ.App., 249 S.W. 1093; Buie v. Miller, Tex.Civ.App., 216 S.W. 630; Decker v. Rucker, Tex.Civ.App., 202 S.W. 1001; Gulf Oil Corporation v. Marathon Oil Co., supra; Great Plains Oil & Gas Co. v. Foundation Oil Co., supra. And it does not apply in cases where the true boundary is established conclusively by the undisputed evidence. Campbell Banking Co. v. Hamilton, Tex.Civ.App., 210 S.W. 621; Gulf Oil Corp. v. Marathon Oil Co., supra; Great Plains Oil & Gas Co. v. Foundation Oil Co., supra.

Appellants also rely on the doctrine of agreed boundary. In that connection, they rely upon the acts and conduct of the parties beginning in 1909, in building the fence between their lands and their recognition of and acquiescence in the fence as the boundary line since that time. The record shows that Smith and Corkill had the survey made and were building the fence when J. R. Foster discovered the work and agreed to and did pay his part of the cost. It also appears without dispute that Hayes Dix, the surveyor, was running the line as the true boundary line, and not as any compromise of an uncertain, doubtful or disputed line, and that the parties relied on, acquiesced in and recognized it in the belief that it was the true line. See, 11 C.J.S. Boundaries § .64 b, p. 637.

■■ Where the boundary line between two adjoining landowners is doubtful, uncertain. or disputed, they may agree on a division between them, and when executed

each will own up to this line as if it were a natural boundary, or as if their deeds or grants called for it. Such agreement may be implied as well as expressed. 11 C.J.S. Boundaries § 64, p. 636. However, where the line is capable of ascertainment by measurement and survey, and the parties agree upon a line so measured or surveyed, not as a compromise, as to an uncertain boundary, but to reproduce the true line, and they proceed under a mutual mistake that it is the true line, the line established is not binding and the agreement may be invalidated. 11 C.J.S. Boundaries § 64 b, p. 637.

■ We think that at most the evidence presented an issue of fact as to whether or not the parties agreed upon the fence line as the boundary between the parties' lands. There is no evidence in the record as to any express agreement. The only remaining question is whether or not an implied agreement could be inferred from the conduct of the parties. This was a question of fact for the jury to determine. The record shows that the court submitted the issue of agreement of the fence line as the boundary, conditioned upon an affirmative answer to the previous issue, inquiring if at the time there was uncertainty, doubt, or dispute as to the boundary line between the tracts of land. The jury answered that there was no uncertainty, doubt or dispute, and under the court's instruction did not answer the issue as to an agreement. Appellants contend that inasmuch as the evidence shows that at the time the line had not been surveyed on the ground, its location on the ground was unknown, and that uncertainty and doubt were shown by the undisputed evidence.

■ Appellants did not object to conditional submission of the issue on agreement, nor did they make any request for an unconditional submission of such issue, which involved the land in dispute but included it in the requested issue concerning a strip of land on the north side of Sur-

vey 200 which is not in dispute. Therefore, appellants waived the right to have such issue answered, and waived the rights to any benefit they might receive from a favorable answer to such issue. Rule 279, T.R.C.P.; Whiteside v. Tackett, Tex.Civ. App., 229 S.W.2d 908, error dismissed.

 Appellants contend that by reason of the long recognition of and acquiescence in the fence line as the boundary by appellee and his predecessors, that he is legally estopped to deny such boundary. We overrule this contention. It is only where conduct or statements are calculated to mislead a party, and are acted upon by him in good faith to his prejudice, that he can invoke them as the basis for such an estoppel, and if they relate to the title to real property, where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel. State of Oklahoma v. State of Texas, 268 U.S. 252, 257, 45 S.Ct. 497, 69 L.Ed. 937, 943. Accord Great Plains Oil & Gas Co. v. Foundation Oil Co., supra; Hunter v. Malone, 49 Tex.Civ.App. 116, 108 S.W. 709; Tucker v. Smith, 68 Tex. 473, 3 S.W. 671. The issue of estoppel was submitted to the jury and answered adversely to appellants.

 Appellants also contend that the undisputed evidence shows title in them under the ten-year statute of limitations, that the jury's finding against such limitation should be disregarded, and that judgment should have been awarded to appellants under their plea of limitation. We overrule this contention. While, under the circumstances above discussed, the land involved had been fenced in with the Ranch land for many years, there is no testimony by any officer or agent of the Ranch that the Ranch ever asserted any claim to the land adverse or hostile to the claim of the record owner, nor is there any proof of use or enjoyment for any continuous period of ten years. In fact, there is no evidence of any overt act indicating any claim of ownership on the part of the Ranch prior to 1954 and 1955, when it leased the land involved to appellants Magnolia Petroleum Company and the Texas Company. Possession alone is not sufficient, it must be commenced and continued under a claim of right inconsistent with and hostile to the claim of the record owner. Art. 5515, Vernon's Ann.Civ.Stats.

 Moreover, the trial court, in submitting the issue of limitation, required the jury to find whether or not the appellants had adverse possession for any period of ten years from July, 1909, to the filing of this suit, and we are of the opinion that an affirmative answer to this issue would not have given appellants title under the statutes of limitation. The suit was filed May 11, 1955, the record shows that the mineral estate was severed on October 25, 1944, and there is no evidence of any occupancy except the surface estate. In order to acquire title to the mineral estate by adverse possession of the surface, if such possession was adverse, then the ten-year period of adverse possession must have at least begun prior to the severance of the mineral estate. Vol. 1–A Summers, Oil and Gas, pp. 306 et seq., § 138; Watkins v. Certain-Teed Products Corp., Tex.Civ.App., 231 S.W.2d 981.

 Appellants also contend that J. R. Foster having made a statement, during a vacancy hearing before the Land Commissioner, that he did not claim any land outside his fence, the Ranch and Magnolia Petroleum Co., in purchasing the excess in Survey 199, situated to the north of Survey 200, relied upon Foster's statement and did not purchase the small part of the Survey lying inside the Foster fence. We overrule this contention. Whether or not Foster's statement, if made, misled appellants and induced them to act to their prejudice or injury, was a question of fact for the jury. The jury having answered

that issue against appellants, their finding is binding on this Court.

■ Appellants complain of the action of the court in excluding an instrument which purports to be an excerpt of some proceedings before the State Land Commissioner in 1938. We perceive no error in this ruling. The instrument is not sworn to, officially certified, or otherwise authenticated, and falls clearly within the hearsay rule.

We have examined appellants' remaining points of error and deem them without merit, to comment thereon would unduly lengthen this opinion. Such points are overruled.

The judgment is affirmed.