DECKER v. RUCKER. (No. 8791.)

(Court of Civil Appeals of Texas. Ft. Worth. March 23, 1918. On Correction of Judgment, April 6, 1918. Rehearing Denied April 27, 1918.)

1. BOUNDARIES ⟨⟩46(1)—SETTLEMENT BY PAROL AGREEMENT.

Boundary disputes may be settled so as to pass title by definite and unconditional parol agreements between the owners of abutting tracts.

2. BOUNDARIES ⟨⟩46(1)—SETTLEMENT BY PAROL—VALIDITY OF AGREEMENT.

Where the former owner of plaintiff's tract agreed with the former owner of defendant's tract to a line surveyed as a boundary between the tracts, upon condition that his tract should not be left with less than 80 acres, and defendant admits that plaintiff was entitled to recover, unless defeated by some special defense pleaded, the line surveyed cannot be held to be the true boundary.

3. EVIDENCE ⟨⟩265(5)—ADMISSIONS—BOUNDARIES.

Defendant's admission that plaintiff was entitled to recover, unless defeated by some of the special defenses pleaded, was an admission that plaintiff's deed and the deeds through which he deraigned title conveyed the legal title to the strip in controversy.

4. BOUNDARIES ⟨⟩48(6)—ACQUIESCENCE—EFFECT.

In suit involving title to a strip of land on a boundary between the tracts of plaintiff and defendant, plaintiff's failure to protest against improvement of strip, and his apparent silent acquiescence in claims asserted by owners of defendant's tract, held at most to show that the true boundary line was where defendant claimed it to be.

5. BOUNDARIES ⟨⟩47(3) — ACQUIESCENCE IN IMPROVEMENTS—IGNORANCE.

Mere silence and failure of plaintiff to protest against improvements by defendant at great expense of a strip on the boundary would not estop plaintiff from claiming the strip as against defendant, where plaintiff did not know

the location of the true boundary line at the time the improvements were made; the means of ascertaining the true boundary being as open to defendant as they were to plaintiff.

6. BOUNDARIES ☞47(3) — ESTOPPEL — IMPROVEMENTS.

Allegations that defendant was ignorant of the location of the boundary line, that the same was known to plaintiff, and that by silence of plaintiff defendant was induced to make improvements on the strip in controversy, were necessary to show an estoppel against plaintiff.

7. BOUNDARIES ☞47(5)—ESTOPPEL.

Finding that when the survey was made by T., L., who then owned defendant's tract, informed W., who then owned plaintiff's tract, of his intention to sell the land by the acre, and up to the line located by T., and that W. replied that he would agree to said line, that it suited him just so he had his 80 acres, and that pursuant to said agreement L. sold to M., up to said line, would not show an estoppel: first, because there was no proof that L. was thereby placed in a worse position; second, because there was no proof that by reason of such conditional agreement M. was induced to buy such excess in acreage; and, third, because none of the facts were pleaded by defendant as an estoppel against plaintiff.

8. TRESPASS TO TRY TITLE ☞59—ON CORRECTION OF JUDGMENT — VALUE OF IMPROVEMENTS—FINDINGS.

A finding of the value of the improvements placed by defendant on the strip in controversy was essential for rendition of final judgment for value of improvements by the court, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 7763–7768, as to damages for improvements in trespass to try title, and as to judgment or decree reciting estimated value of the premises without the improvements.

Error from District Court, Erath County; W. J. Oxford, Judge.

Suit by J. T. Decker against Bill Rucker. Judgment for defendant, and plaintiff brings error. Reversed and rendered in part, and reversed and remanded in part.

Chandler & Pannill, of Stephenville, for plaintiff in error. Hickman & Bateman, of Stephenville, for defendant in error.

DUNKLIN, J. This suit involved the title to a strip of land, but was in reality a controversy over the location of the boundary line between a tract of land owned by plaintiff, J. T. Decker, and a tract owned by the defendant, Bill Rucker; the disputed line being the west boundary of plaintiff's tract and the east boundary of defendant's tract. The trial was without the aid of a jury, and upon findings of fact and conclusions of law, which were reduced to writing and filed by the trial judge, judgment was rendered in favor of the defendant, from which plaintiff has prosecuted this writ of error. Upon the trial the defendant admitted title in plaintiff to the land in controversy, except in so far as it might be defeated by facts specially pleaded in his answer as defenses to the suit, which defenses will now be noticed. The statutes of limitation of three, five, and ten years were all pleaded, but the court failed to sustain any of those pleas presumably, because of a lack of evidence to support them.

Another defense specially pleaded was that about the year 1900, one Geo. Reaves, who was then the owner of plaintiff's tract, and H. J. Bingham, who was then the owner of defendant's tract, by agreement established the boundary line between the two tracts, the location of which was then in dispute between them, and that according to the line as so established defendant is the owner of the strip of land in controversy. But this defense was not sustained by the court and need not be further noticed.

Other defenses pleaded were as follows: First, that during the year 1910 there arose a dispute between D. P. Lester, who then owned the tract now owned by the defendant, and Jno. M. Webb, the then owner of the tract now owned by plaintiff, as to the true location of the boundary now in controversy, and by agreement between them then made the line was located and fixed on the ground, in accordance with which location the land in controversy lies within the boundaries of the land described in Lester's deed and in defendant's deed; and that ever since said agreement as to the boundary line the same as then fixed has been recognized and acquiesced in by said Webb and his subsequent vendees, including plaintiff.

Another special defense pleaded was one of estoppel, and is as follows:

"Defendant also says that independent of the agreement set out in the preceding paragraph, that the plaintiff by his own words, conduct, and actions has agreed to the boundary line above described in the following manner: That after plaintiff had purchased the land upon which he now resides, and after the defendant had purchased the land upon which he now resides, the plaintiff knowing that defendant's deed called for the boundary line herein described and mentioned, and knowing that said defendant claimed said boundary line as the true division line between the lands of plaintiff and the defendant, stood by and permitted and watched, without protest, the defendant shrub, grub, and plow six acres on defendant's side of the agreed boundary line, and a portion of the land herein sued for, at an enormous expense to defendant, without in any wise objecting to or protesting against it, and without informing this defendant that he (plaintiff) claimed any portion of said land. Wherefore defendant says that such actions on the part of plaintiff was in fact and in law an agreement that the boundary line herein described was the true division line between the land of plaintiff and the defendant, and that the plaintiff having failed to speak when it was his duty to speak, is now estopped to deny said agreed boundary line and set up another and different one."

Defendant pleaded further improvements in good faith, and in the alternative prayed for judgment for their value if the land should be decreed to belong to plaintiff.

Following are the findings of fact and conclusions of law filed by the trial judge:

"I find: That plaintiff has a deed to and is the owner of 80 acres of land, more or less, out of the said D. B. Madden survey, and that defendant has a deed to and is in the possession of

50½ acres of land of the said Madden survey, which land lies west of and adjoining the land of plaintiff. That the said tract of land now owned by defendant was originally called and conveyed as a 40-acre tract, more or less. That it was generally understood to contain more than 40 acres. That in the year 1904 R. R. Shelton, who was then the owner of the said 40-acre tract of land, conveyed same to N. C. Spicer, and just before said Spicer bought said land from Shelton the said Shelton pointed out the four corners to said tract of land, and that Spicer bought same with reference to said corners, and deeded same to said Spicer as 40 acres of land, more or less. That at that time one Marion Shelton, a brother of said R. R. Shelton, owned and was in possession of the land now owned by plaintiff, and had knowledge of and acquiesced in said corners.

"I find corners of said 40-acre tract so pointed out to said Spicer by the said R. R. Shelton were as follows: The southwest corner a gun barrel in ground; the southeast corner a sandstone; the northeast corner a petrified rock in ground; and for the northwest corner, a rock in the ground. That all of these corners appeared at that time to be old and well established. That there is, and was not at that time, a division fence between the land owned by plaintiff and the land owned by defendant, but there is an old fence on the land belonging to plaintiff about 40 or 45 yards east of and parallel to the line between the petrified rock and the said sandstone. That said fence was generally recognized as not being on the line separating said two tracts of land. That said N. C. Spicer sold said 40-acre tract of land to E. R. Spicer, who bought said tract of land with reference to said corners pointed out by R. R. Shelton. That said E. R. Spicer was present when the corners to said tract of land were pointed out to the said N. C. Spicer by said Shelton. That said E. R. Spicer in turn sold same to D. P. Lester, and that in each of the transfers just mentioned said land was deeded as '40 acres, more or less.' That while said D. P. Lester owned said tract of land, he cleared and put into a state of cultivation something like 4 acres alongside and just west of the line between the petrified rock and sandstone, which line was then recognized as the division line separating the 40-acre tract and the 80-acre tract. That at this time one John Webb owned and was in possession of said 80-acre tract. That said Webb knew that said Lester was putting said land in cultivation, and never said anything to the said Lester about being over the line, and never objected to Lester's clearing said land. That while Lester owned said tract of land, he procured one Thompson, a surveyor, to survey his said land. That while D. P. Lester was having said land surveyed, he called the said John Webb, who still owned the 80-acre tract of land, for the purpose of agreeing upon and establishing a permanent division line between said two tracts of land. That said surveyor located the northeast corner of said 40-acre tract of land at the petrified rock in the ground. That the said D. P. Lester stated to the said John Webb that he wanted to sell his land by the acre, and for that reason he was having same surveyed. That Lester asked Webb if he (Webb) would agree that said petrified rock should mark and establish the true division line between their said two tracts of land. That the said Webb thereupon stated that he would agree to said line; that it suited him, just so he had his 80 acres. That pursuant to said agreement with Webb the said survey by Thompson, the said Lester sold said tract of land to Walter Macon by the acre, and deeded same as 50½ acres, which was the amount of land found by said Thompson to be included within the four corners of the 40-acre tract hereinbefore mentioned. That there never was at any time a fence marking the division line between said two tracts of land. That after said Macon purchased said land, Webb told said Macon that he supposed the petrified rock and the sandstone marked the true division line between said two tracts. Macon suggested to Webb, who still owned the 80-acre tract of land, that they would go in together and build a partition fence on said line, to which Webb then agreed, but their agreement was never carried out.

"I further find: That during the time that Walter Macon owned the land now owned by defendant, plaintiff purchased the said 80-acre tract of land from the said John Webb. That at the time plaintiff purchased said land, he knew that the said Macon claimed to the petrified rock and sandstone. That shortly afterwards plaintiff took one Chas. Long to the said petrified rock on the north line of said survey, and then and there told the said Long that said rock marked the division line between his land and the land now owned by defendant, and that said petrified rock was his northwest corner. That during the year 1912 the defendant bought and moved onto said land now claimed by him. That his deed calls for 50½ acres of land. That defendant knew of no dispute concerning the boundary line between his land, the land now owned by plaintiff, and the corners were well marked and defined, and defendant bought with reference to them. That plaintiff and defendant agreed in the presence of one Chas. Long to build a division or partition fence between their said lands from the petrified rock on the north to the said stone on the south. That there was at the said time about 20 acres of land of the 40-acre tract in cultivation. That immediately upon moving upon said tract of land, which was in December, 1912, defendant told plaintiff that he intended to put some land in cultivation. That during the months of January and February the defendant cleared, grubbed, and shrubbed and put into a good state of cultivation about 3 acres of land adjoining and just west of the line from the petrified rock to the said sandstone, or up to the division line established by Thompson. That all the time defendant was putting said land into cultivation the plaintiff was working close by on said 80-acre tract of land, and saw the defendant daily, and knew that the defendant was clearing up to the line between the petrified rock and sandstone. That at no time did plaintiff inform defendant that he (defendant) was over the line on plaintiff's land, nor did plaintiff raise any objections to the work being done by defendant. That during the months of January and February, 1914, the defendant began clearing and putting into a state of cultivation more land on the east side and adjoining the land which he had put into cultivation the year before, and which land is now in controversy. And the defendant put into a state of cultivation something like 6 or 6½ acres of his said tract of land, all of which said cultivated land is now in controversy. That the difference in the market value of said land before and after same was put into cultivation is $20 per acre. That nothing was ever said between plaintiff and defendant about the boundary line between them until late in the winter or early in the spring of 1914. That it was generally understood that the strip of land lying between the line established by Thompson and the old fence on plaintiff's land belonged to no one in particular, and that this strip of land was an excess. That in the latter part of the winter of 1914 defendant and plaintiff talked about measuring their said land and dividing the supposed excess between them, and then building a fence on the line. That at said time nothing was said about putting said line west of said petrified rock and sandstone. That during March, 1914, Decker, plaintiff herein, employed McKewn Johnstobe, county surveyor of Erath county, Tex., to survey his (Decker's) tract of land, and that it was then ascertained, after said survey was made, that there was not 80 acres of land in said tract east of the line established

by Thompson. From this finding a dispute arose between plaintiff and defendant, which resulted in the bringing of this lawsuit.

"Conclusion of Law: Upon the foregoing facts, I conclude as a matter of law that plaintiff should take nothing, and that the defendant should be discharged with his costs."

[1] It is well settled that disputes as to boundary lines may be settled by parol agreements between owners of abutting tracts. Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 23 Am. St. Rep. 340. But as the enforcement of such an agreement may result in the transfer of title by a parol agreement contrary to the statute of frauds, the agreement should be definite and unconditional, and in the absence of an agreement of that character title will not pass.

[2] It will be noted that in the court's findings, Webb, the former owner of plaintiff's tract, did not definitely agree on the line surveyed by Thompson as the boundary line between the two tracts. His agreement, as shown by the court's finding, was upon the condition that his tract should not be left with less than 80 acres, and according to another finding his tract does not contain 80 acres if the line surveyed by Thompson be taken as the true boundary.

[3] In fact, defendant's admission that plaintiff was entitled to recover, unless defeated by some of the special defenses pleaded, was an admission that plaintiff's deed and the deeds through which he deraigned title conveyed the legal title to the strip in controversy; in other words, that the alleged agreed boundary was not the boundary described in the field notes of those deeds. It follows, therefore, that the line surveyed by Thompson cannot be held to be the true boundary by virtue of the alleged agreement on the part of Webb and Lester.

[4] The most that could be said of the failure of plaintiff to protest against the action of defendant in improving the land in controversy and of his apparent silent acquiescence in the claims asserted by the owners of defendant's tract to title up to the line surveyed by Thompson would be to show that the true boundary was in fact where defendant claimed it to be. But, as noted above, defendant admitted that such was not its true location, but that it was in fact where plaintiff claimed it to be.

[5, 6] The allegations contained in the plea of estoppel urged by the defendant and quoted above were, if true, insufficient in equity to estop plaintiff from claiming the land in controversy as against the defendant. They consist merely of silence, and a failure to protest against the improvement of the disputed strip by the defendant at great expense to the latter. The plea even fails to contain allegations that defendant was ignorant of the location of the true boundary line, that the same was known to the plaintiff, and that by the silence of plaintiff defendant was induced to make such improvements. At all events, those were necessary elements of an estoppel. Blum v. Merchant, 58 Tex. 400; Equitable Mfg. Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Steed v. Petty, 65 Tex. 490. Furthermore, there is an absence of proof that when such improvements were made plaintiff knew the true location of the boundary line. On the contrary, the evidence shows that he did not acquire such knowledge until long after the improvements were made, and then only by an actual survey of the land. Further still, the means of ascertaining the true location of the line by an actual survey of the land was equally as open and available to defendant when he made the improvements as they were to plaintiff.

[7] The findings by the trial judge that when the survey was made by Thompson, Lester, who then owned defendant's tract, informed Webb, who then owned plaintiff's tract, of his intention to sell the land by the acre and up to the line so located by Thompson, and that Webb replied that he would agree to said line, that it suited him just so he had his 80 acres, and that pursuant to said agreement Lester sold to Macon up to said line, would not constitute an estoppel for several reasons: First, there was no proof that Lester was thereby placed in a worse position. In fact the proof showed that he sold to Macon more land than he in fact owned. Second, there is no proof that by reason of such conditional agreement on the part of Webb, Macon was induced to buy such excess in acreage. On the contrary, Macon testified that when he purchased from Lester he knew nothing of said agreement by Webb. Louisiana & T. Lumber Co. v. Dupuy, 52 Tex. Civ. App. 46, 113 S. W. 973. Third, none of those facts were pleaded by the defendant as an estoppel against the plaintiff.

For the reasons indicated, the judgment denying plaintiff a recovery of the land sued for is reversed, and judgment is here rendered in his favor for the property. But judgment is also rendered in favor of the defendant against plaintiff for the value of improvements placed on the land, as found by the trial court, to wit, $20 per acre for 9 acres, or in the aggregate of $180.

Reversed and rendered.

## On Correction of Judgment.

[8] Upon original hearing we overlooked the fact that the trial judge failed to find the value of the strip of land in controversy without the improvements placed thereon by appellee. Hence, there is lacking one of the essential findings for the rendition by this court of final judgment for the value of such improvements. See Vernon's Sayles' Tex. Civ. Stats. arts. 7763 to 7768, inclusive. Furthermore, in appellee's plea over the value of such improvements was limited to a sum less than that found by the trial judge, a fact which was overlooked, and to which our attention was not called in any of the briefs.

Accordingly the former judgment of this court on original hearing in favor of appellee for the value of such improvements is set aside, and the cause is remanded for a new trial of that issue only, but our former judgment, reversing the judgment of the trial court with respect to the title to the land in controversy and rendering a judgment in appellant's favor therefor, is left undisturbed.