BUIE v. MILLER et al.   (No. 1561.)

(Court of Civil Appeals of Texas.   Amarillo. Oct. 29, 1919.   Rehearing Denied Nov. 26, 1919.)

1. DEEDS ⬥95—BINDING EFFECT OF TERMS UPON PARTIES TO DEED.

Parties making and accepting a deed to realty are bound by its terms.

2. DEEDS ⬥111—PROPERTY PASSING AS AFFECTED BY DESCRIPTION OR INTENT.

Nothing passes by deed except what is described in it, whatever the intention of the parties thereto may have been.

3. EVIDENCE ⬥460(5)—PAROL EVIDENCE AS TO DESCRIPTIVE WORDS IN DEED.

While parol evidence is often admissible to ascertain what lands are embraced in the description of a deed, such evidence cannot make the deed operate upon land not embraced in the descriptive words.

4. DEEDS ⬥115—DESCRIPTION; LANDS NOT EMBRACED IN THOSE CONVEYED BY COURSES AND DISTANCES.

A grant of 640 acres, located by course and distance, with no marks called for or identified, will not embrace lands not included in the 640 acres, or take the grant of conveyance to lines and corners not called for, merely because the parties may have believed that the survey would embrace such lines and corners.

5. BOUNDARIES ⬥40(3), 48(4) — ACQUIESCENCE RAISES PRESUMPTION OF CORRECTNESS.

While acquiescence in a boundary line raises a strong presumption that the line is correct, acquiescence is a question of fact for the jury, and, where there is no room to doubt the true location, a mere acquiescence in another line will not support a verdict based thereon.

6. BOUNDARIES ⬥37(1) — SUFFICIENCY OF EVIDENCE TO SHOW ESTOPPEL.

Where a deed called for 640 acres, located by course and distance, but no marks were called for or identified, in a suit to recover an excess which plaintiff grantee supposed to be contained in the tract bought as shown by certain marked corners, with reference to which he purchased, evidence *held* not sufficient to show an estoppel upon grantor to deny the corners as claimed by plaintiff.

Appeal from District Court, Randall County; Henry S. Bishop, Judge.

Action by B. Frank Buie against Frank T. Miller and others. Judgment for defendants, and plaintiff appeals. Affirmed.

W. J. Flesher, Geo. A. Brandon, and B. Frank Buie, all of Canyon, and A. S. Rollins, of Dallas, for appellant.

C. E. Gustavus, of Amarillo, for appellees.

HUFF, C. J.   Appellant, Buie, sued Miller and others to recover 45 acres of land out of section 109, block M8, Randall county. It is alleged that the 45 acres is in excess over 640 acres in section 109. The record shows that section 109 was surveyed in January, 1875, and is part of block M8, and calls to begin at a mound the S. E. corner of survey No. 108, in the same block; thence S., 1,900 vrs., to mound; thence W., 1,900 vrs., S. E. corner of survey 92, in same block; thence N., 1,900 vrs., a mound; thence E., 1,900 vrs., to the beginning. The section was patented August 7, 1877, describing the land as in the original field notes of the survey. It was agreed upon the trial that all the surveys in block M8, in Randall county, as shown by the field notes, were consecutively tied together. D. Curry is shown to be the common source of title. On the 6th day of December, 1906, D. Curry conveyed to G. W. Gale the section described as follows:

"Being all of section 109, block M8, patent No. 443, vol. 28, A. B. & M. land, containing 640 acres."

By deed dated December 7, 1906, Gale and wife conveyed 160 acres of land out of section 109 to C. T. Bartok, described as—

"being the N. W. 160 acres out of survey 109, block M8, same being 950 vrs. by 950 vrs., cert. 901, A. B. & M. land."

Also on the same day Gale and wife conveyed to Mrs. C. G. Findley the land described as being 240 acres in survey 109, block M8, cert. 901, A. B. & M. land,

"beginning at the N. E. corner of a 160-acre tract conveyed by me to C. T. Barto, said point being 950 vrs. E. of the N. W. corner of said survey 109 and the N. W. corner of this tract; thence E., with the N. B. line this section, to the N. E. corner of the same and the N. E. corner of this tract; thence S., with the E. B. line of this section, a sufficient distance so that when the south line of this tract is run parallel to its north line it will exactly contain 240 acres of land, to a stake in said E. B. line for the S. E. corner of this tract; thence W., to a stake in the E. B. line of a tract this day conveyed by me to Geo. E. Childs, the same being the S. W. corner of this tract; thence N., with the E. B. line of said Childs tract and the E. B. line of said Barton tract, to the place of beginning."

. Also on the same day Gale and wife conveyed to Geo. E. Childs out of the section the first tract, being described as—

"beginning at a stake in the W. B. line of said section 109, block M8, A. B. & M. land, at the S. W. corner of 160-acre tract in said section, this day conveyed by me to C. T. Barto, said point being 950 vrs. S. of the N. W. corner of said section 109, for the N. W. corner of this tract; thence E., with the S. B. line of the C. T. Barto tract, to the S. E. corner of said 160-acre tract, for the most N. E. corner of this tract; thence S., to a point in the S. B. line of said section 109, for the S. E. corner of this tract; thence W. 950 vrs., with the S. B. line, to the S. W. corner of said section; thence N., with the W. B. line of said section, to the place of beginning. Second tract being bounded as follows: Beginning at the S. E. corner of said first tract; thence E., with the S. B. line of said section, to the S. E. corner of same; thence N., with the E. B. line of same, a sufficient distance so that when the N. line of this tract is run parallel to the south line of this tract it will exactly include 240 acres in this tract and the first tract jointly; thence W., parallel to the South boundary line, to a point in E. B. line of the first tract; thence S., with the said E. B. line, to the place of beginning."

In each of the three deeds there is a stipulation:

"The said G. W. Gale hereby agrees to have said land hereby conveyed surveyed promptly, and turn over the field notes to the vendee herein."

Frank T. Miller, one of the appellees, by mesne conveyance is vested with title to the Childs tract of land; also the Barto. The appellant, Buie, bases his right to the 45 acres in controversy on a special warranty deed from Gale to himself dated June 4, 1917. Without setting out the field notes, we state this 45 acres is bounded on the east by the east line of the section, on the south by the second tract in the Childs deed, on the west by the first tract in the Childs deed, north by the tract described in the Findley deed. In other words, it assumes a vacancy in the section between the two tracts—the one deeded to Findley and the other to Childs, 238.5 vrs. wide north and south, and 1,066.7 vrs. long east and west. This result is obtained by assuming that a certain rock is the N. E. corner of section 109, and a gas pipe for each of the corners for the S. E. and S. W. corners of section 109. In December, 1906, or 1907, the county surveyor of Randall county, at the instance of Gale, divided the section in quantities according to deeds of Gale's vendees above mentioned. In doing this work he began at the gas pipe set in the road, assuming it to be the S. E. corner of section 109, running north to a stone for the N. E. corner, then going to the gas pipe for the S. W. corner of the section, and running north to a point where that line would intersect a line running W. from the stone,

and there putting in a stake for the N. W. corner of the section. He found the west and east line of the section to measure, between the points assumed by him as the corners, 1,917 vrs., and the north and south lines to measure 2,016.7 vrs. He then surveyed out 160 acres in the N. W. corner for the Barto, 240 acres for the Findley, and 240 acres for the two tracts to Childs. He gave the proper measurements of lengths of lines to get the quantity called for in the deeds.

Establishing the section corners on the gas pipes and the stone corner and the the gas pipes and the stone corner and the one ascertained by the intersecting lines gave the quantity of land within such boundaries as 685 acres, and after giving the quantity to the several vendees called for by their deeds and running from the corner so assumed by him it left the 45 acres vacancy, for which appellant sues. The testimony of one of the original surveyors who located block M8 and other contiguous blocks shows that the lines and corners were not actually surveyed on the ground, and that no lines or corners were actually established or fixed on the ground at the time of the original location. The evidence shows base lines were run, and the blocks in that country were platted in from these base lines. A base line probably traversed block M8, but did not touch section 109, and the corners and lines for such base line were marked with earth mounds at certain points, and along the base line earth pits were dug. It it shown from the evidence that no such mounds or pits were found on section 109. The county surveyor who surveyed the section by the stone and two gas pipes testified that he found no work on the ground that would indicate mounds called for in the original field notes. He had not at any time made a survey from any known corner called for in the original field notes to the gas pipes, and had no personal knowledge as to who put in the rock or gas pipes. He knew from the surveying he had done that there were some monuments in Randall county which could be identified from the field notes, and further testified:

"Surveying out course and distance from any corners called for in the original field notes which I can identify, it is a fact that I would not find myself at the gas pipe for the S. E. corner of section 109."

D. Curry, who sold the land to Gale, stated that the fence on the north of the section had been there some 27 years, and on the east 18 or 20 years, and on the south line about 27 years, and on the west about 10 years. This fence was erected by Mr. Cook, who at that time owned section 92, just west of section 109. The fence appears to have been erected in reference to the rock and gas pipe. It was reputed that McLellan plac-

ed the rock corner, and that Hutchinson, the surveyor of Swisher county, placed the pipe for the N. E. and N. W. corner of section 110. However, this is all stated as hearsay. The gas pipes were placed there some 12 or 13 years after Curry moved to the country. He stated he never had a' survey of the section made. The fence was not placed in reference to the Hutchinson corner. The line was located by himself. He stated the fence was located from the rock corner. It appears from his testimony that 'none of the lines of the section were run by a surveyor for the purpose of locating a fence on the lines. He also testified:

"I understand that if this line is run by course and distance from an old supposed and identified corner in block 6, that these section corners would be at a different place to the points where the rocks are placed."

Gale stated Curry called his attention to the gas pipe, stone corner, and fence when he purchased, and stated there was an .excess in section 109; that there were 685 acres, and that this was partly the inducement on his part to the trade. It appears that the parties who purchased from Gale were on the land when they purchased, and saw or knew of the fence; but we find no sufficient evidence to show that they purchased to the lines as represented by the fences, and as to them there was nothing specifically said, except as stated by Gale, who testified that his attention was called to the pipes and fences as well as the excess, which was an inducement to the trade. Gale nor his agents who had the land surveyed and parceled out, notified either of his vendees that he had done so, or furnished either with the field notes of their respective tracts. The surveyor did not furnish either with his work, and in fact knew neither of them at the time. Subsequently, however, it appears that Mrs. Findley and Miller had the land, as marked by the fences, pipes, and stone, surveyed so as to give each a proportion of the excess, and in the proportion of the amount called for by their deeds, and placed their partition fences accordingly. The trial court instructed the jury substantially that the deed of Gale conveyed to Barto 160 acres, Mrs. Findley 240 acres, and Childs 240 acres of section 109, and, if they found the section contained land in excess of what was conveyed by the deeds outside the boundaries of the then several tracts as described by the deeds, to find for plaintiff for the amount of such excess by virtue of the deed from Gale to Buie. He further told the jury in determining the excess, over 640 acres, they should consider all the facts and circumstances as to what is the length of each of the four boundary sides and of said survey between the four corners thereof, and the amount of land inside of

said boundaries. The jury returned a verdict for the defendants.

The first assignment is based on the failure of the trial court to instruct a· verdict for the plaintiff, Buie. The proposition thereunder asserts that a section of land fenced on three sides, and marked on the ground, when recognized as corners, and the vendor sells to one vendee, who accepts the deed, then the land actually pointed out is the actual land sold, whether the land actually pointed out was within the bounds of the section intended to be sold, and 'that both parties are bound to the land actually pointed out, and are estopped to deny the same. The proposition asserts the same proposition of law as applied to the subsequent vendees of Gale.

[1] Without stating more of this complex proposition, we think it does not state a correct proposition of law. Parties making and accepting a deed are bound by its terms. The deed from Curry to Gale conveyed section 109 by its patent number, and recited that the section contained 640 acres. The patent gives the field notes as it was originally surveyed. The original field notes give its beginning corner at the S. E. corner of section 108, calling for its four sides, 1,900 vrs., and for mounds at its corners. The deeds from Gale to his several vendees call simply for the corners and lines of the section. They nowhere call for the rock or pipe corners, or to the fence alleged and sought to be shown, as pointed out, for the lines. It was Curry's evident intention to convey the section according to the original field notes, and Gale's to subdivide and convey to his vendees the entire section, according to its field notes. It would have been a simple matter if Curry had intended to sell, and Gale to buy, the excess asserted to have called for the rock and pipe corners and for the fences thereon located. This the deeds do not purport to do, but they simply confine the field notes to the original field notes, 1,900 vrs. square. They do not call for a survey of 1,917 by 2,016.7 vrs., which appellant now asserts Curry conveyed, and out of which he now claims he conveyed the three tracts of land, aggregating 640 acres, leaving the excess, 45 acres. The uncontroverted evidence shows there were no marks, either natural or artificial, found on the ground, by which the survey could be located from the original field notes; and the testimony is also uncontroverted that no such marks were ever so made, but that the survey was simply platted in from a base line run for a series of blocks, one of which was block M8. It is shown with reasonable certainty the location of the section can be fixed from a known and established corner for this and other sections in the block, platted in consecutively by running the course and distance called for, and that if it was.

so surveyed the rock or pipe corners would not be reached. This is a case where the land should be located by course and distance, such calls being the more certain. It is not at all certain that any surveyor ever placed the pipes or rocks to mark the corners of this section. If so, there is no evidence how the surveyor or surveyors arrived at the conclusion that such were the corners of the section. Certainly the original surveyor never called for them or placed them at that point.

[2] It is well settled that nothing passes by deed except what is described in it, whatever the intention of the parties may have been.

[3] While parol evidence is often admissible to ascertain what lands are embraced in the description, such evidence cannot make the deed operate upon land not embraced in the descriptive words. Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 669; Sloan v. King, 33 Tex. Civ. App. 537, 77 S. W. 48.

[4] A grant of 640 acres, located by course and distance, with no marks called for or identified, will not embrace land not included in the 640 acres, or take the grant of conveyance to lines and corners not called for in any deed, simply because the vendor and vendee may have believed when the deed was executed the survey would embrace such lines and corners. If such was their understanding and purpose, they should have embraced that purpose in the deed. All the evidence in this case is to the effect that the field notes of section 109 will not reach either of the corners assumed by the surveyor and Gale. The evidence from the field notes and that of the original surveyor conclusively established there was no excess in section 109. This case does not involve the question of distributing the excess in a block of surveys made at the same time where the boundaries of the block are established. Gale only purchased section 109, or 640 acres, according to its field notes, and within its corners as called for therein. He sold to his vendees, appellees herein, the 640 acres so embraced. He did not sell them the land outside of those corners and between such corners and the stone and pipe corners. Neither by his deed did he purchase such land. He, therefore, had no excess to sell appellant, as he got none by his deed. The case of Chesson v. La Flore, 191 S. W. 745, cited by appellant, sustains our proposition. The headnote, which we copy, reflects the opinion of the court:

"Where the boundaries of a grant as actually located and measured on the ground were so described in the deed, they are the limits of the grantee's rights, although the parties intended to make the northern line common with the northern boundary of a larger tract erroneously surveyed and subsequently found to be further north than the boundary described in the deed."

We do not think the circumstances of acquiescence in this case would have authorized the trial court to have instructed the jury to find a verdict for the appellant for the land sought to be recovered. It is our view that the court could not properly have instructed the jury that the recognition of the stone and pipe corners by the parties were conclusive. No deed executed at the time called for them; no party appears to have asserted that they were corners. It was simply asserted that there was an excess in the survey, and no deed called for the excess; in fact, it is shown the surveyor and Curry recognized that the field notes would not place the corners at these points.

[5] The strongest statement of which the rule with reference to acquiescence can be made is that it should have great weight, and may furnish a strong presumption that the line acquiesced in is the correct line. However, acquiescence is a question of fact for the jury. Lopez v. Vela, 200 S. W. 1111, and authorities cited; Medlin v. Wilkins, 60 Tex. 409; Hefner v. Downing, 57 Tex. 580; Wiley v. Lindley, 56 S. W. 1001; Camp v. League, 92 S. W. 1066. But where there is no room to doubt the true location, a mere acquiescence in another line would not support a verdict in favor thereof. Bundick v. Moore-Cortes Canal Co., 177 S. W. 1030, at page 1036; Campbell v. Hamilton, 210 S. W. 621. It is asserted that appellees are estopped to deny the corners as claimed by appellant. There might be some ground for claiming that Curry as to Gale would be estopped from claiming that the corners were elsewhere, but this would not be established by conclusive evidence. While Gale testified that Curry represented there was an excess in the section and designated the fence, stone, and gas pipe, Curry does not so testify in terms, but, on the contrary, states he did not know of his own knowledge who put in the corners, and that his understanding was they would not be reached by survey from known corners. His deed certainly does not call for them, and does not purport to convey an excess. Gale obligated himself in his deed to survey and furnish appellee the field notes of their several tracts within the four corners of section 109. This he did not do. He appears to have made a survey for his own benefit and to establish an excess. He was not induced thereby by anything the appellees did. The mere fact that they afterwards appropriated this excess did not injure Gale. If the excess was not conveyed to him, he lost nothing. Appellant does not show that he was induced to purchase the particular piece of land by reason of the acts of conduct of appellees. He evidently purchased on the assumption that the stone and pipes marked the corners. These were not placed there by appellees. Their deed did not call for them;

in fact, if, as the evidence indicates, the lines and corners of section 109 would not reach the stone and pipe corners, the excess was outside of section 109, and was not in the field notes of the appellees. The land sued for by appellant would fall on the land conveyed to appellees by Gale, and hence he has no title thereto. If appellees appropriated the excess outside, it is none of appellant's concern, for it is not his by deed or otherwise. There is nothing in the evidence to show that either Buie or Gale were induced to change their position for the worse by anything appellees did.

[6] In our judgment, there was no estoppel. Love v. Barber, 17 Tex. 312; Clevenger v. Blount, 103 Tex. 27, 122 S. W. 529; Decker v. Rucker, 202 S. W. 1001; Ware v. Perkins, 178 S. W. 846. It is our view that the appellant was required to show an excess in section 109, and that the land he sues for was not included in the deeds to the appellees. This we do not think he has established. At least, the jury had evidence to support their verdict that there was no excess.

The second, third, and fourth assignments are overruled for the reasons heretofore given.

The judgment of the trial court will be affirmed.