**ELLISON et al. v. HUMBLE OIL & REFINING CO. et al.**

No. 1648.

Court of Civil Appeals of Texas. Eastland.

March 26, 1937.

Rehearing Denied May 7, 1937.

Clower & Sewell, of Tyler, W. H. Sanford, of Dallas, and McEntire, James & Shank, of Tyler, for appellants.

Robt. F. Higgins and William D. Orem, both of Houston, Lasseter, Simpson & Spruiell, of Tyler, and Brachfield & Wolfe and Hill & Bath, all of Henderson, for appellees.

FUNDERBURK, Justice.

This is a trespass to try title suit brought by E. A. Ellison and others against Humble Oil & Refining Company and others seeking to recover an 8.125-acre tract of land in Rusk county. Prior to judgment a portion of the land was eliminated by a dismissal of the suit as to it. Plaintiffs specially pleaded their title, thereby limiting their claim to a title by ten years limitation. Some of the defendants claimed under an oil and gas (and other minerals) lease given in 1927 by J. Wooley and wife to C. M. Joiner, and also under certain subsequently executed mineral deeds referring to said lease. Other defendants claimed under similar mineral deeds alone. All contesting defendants contended that the land in suit, the north boundary line of which was marked by an old fence, was included in the land covered by said lease and mineral deeds.

An alternative defense of estoppel was also asserted.

The tract of land in controversy was, according to the allegations of the plaintiffs, "either in the Meredith-McCabe or Thomas J. Martin Surveys, or partly in both surveys." It was definitely described with reference to existing objects on the ground,

among them said fence along the north boundary line. .

In 1893, Overton conveyed to J. Wooley a part of the Thomas J. Martin Survey describing it thus: "Beginning at the creek 45 varas of the southwest corner of Jno. M. Harris Survey;

"Thence N 1390 varas to said. Jno. M. Harris northwest corner;
"Thence W 45 varas;
"Thence N 200 varas;
"Thence W 908 varas;
"Thence S 1135 varas to said creek;
"Thence southeast with said creek to the beginning; containing 224-¾ acres of land."

In 1927, J. Wooley and wife executed to C. M. Joiner said mineral lease on a portion of the above-described land referring, for description, to the record of said deed, but excepting therefrom three tracts previously sold, in no way affecting the description in matters material in this suit. In October, 1930, J. Wooley and wife by deed conveyed to D. F. Cameron and W. D. Tucker one-half interest in the oil, gas, and other minerals in the same land by the same description, except it was further recited that: "It is the intention of this instrument to convey the interest herein set out in and to all the land we own in Rusk County, Texas." The Joiner lease was referred to and the conveyance made subject to same "*in so far as it covers the above described property.*" (Italics ours.) One-half the interest conveyed by this mineral deed, by mesne conveyances, was acquired and owned by the Humble Oil & Refining Company at the time of suit. Other mineral deeds from J. Wooley and wife, and heirs of J. Wooley, deceased, by their terms included only the land in the Joiner lease.

Upon a jury trial the court peremptorily instructed a verdict for all defendants. From the judgment rendered in accordance therewith, the plaintiffs have appealed.

If the 8.125-acre tract (or the part not dismissed from the suit) is not included in the land covered by the Joiner lease, then we think the evidence established conclusively that the surviving widow and heirs of J. Wooley, deceased, and the other plaintiffs as their successors in interest, were shown to have limitation title to said land.

We are further of the opinion that if said 8.125-acre tract of land in suit is not

included in the description by metes and bounds in the Overton to Wooley deed and Wooley to Joiner lease, there was no conclusive evidence of facts to constitute an estoppel in bar of plaintiffs' right to recover. It may be conceded that the documentary evidence, relied upon to show estoppel was sufficient to warrant the belief that Wooley and wife thought the fence was built on the north boundary line of the 224¾-acre tract. There was no evidence that they ever expressly declared that the line marked by the fence was the north boundary line of the land described in the deed. None of the defendants claimed rights under any of such documents which were submitted for adjudication in this suit. There was, we think, no conclusive evidence of facts showing the right of any of the defendants to rely upon the recitations in said documents, nor that in fact they did rely on same. The proposition that in the absence of evidence showing a right of reliance and the fact of actual reliance upon recitations in instruments under which parties asserting an estoppel do not claim, no estoppel exists, is supported, we think, by many authorities, of which may be mentioned the following: Linney v. Wood, 66 Tex. 22, 17 S.W. 244; Buie v. Miller (Tex.Civ.App.) 216 S.W. 630; Ware v. Perkins (Tex.Civ.App.) 178 S.W. 846; Newton v. Easterwood (Tex. Civ.App.) 154 S.W. 646; Davidson v. Pickard (Tex.Civ.App.) 37 S.W. 374; Robert Oil Corp. v. Jones (Tex.Civ.App.) 23 S.W.(2d) 472. We do not determine whether an issue of estoppel was raised by the evidence. No assignment of error, by either party, presents that question. Upon the question of estoppel, therefore, we limit our decision to the holding that no defense of estoppel was so conclusively established as to warrant a peremptory instruction.

■ The mineral deed from J. Wooley and wife to Cameron and Tucker granted, we think, a one-half interest in the minerals in the land sued for regardless of whether the land be within or without the limits of the tract covered by the Joiner lease and the other mineral deeds. The deed by its express terms covered all the land owned by the grantors in Rusk County, Tex. Whether the lessors had title to the land in controversy through their title from Overton, or title by limitation, it was located in Rusk county and subject to the terms of the mineral deed. Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.(2d) 442; Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.(2d) 447.

We come next to consider whether the evidence established conclusively that the north boundary line of the land conveyed by Overton to Wooley and leased by the latter to Joiner was the line marked by the fence built and afterwards maintained by Wooley (being the north boundary line of the 8.125-acre tract in suit) and therefore was not a line 154.8 feet south of it, being the *south* boundary line of said tract in suit. In said deed and lease, and in all the mineral deeds under which any of the contesting defendants claimed, except the one to Cameron and Tucker, the northeast corner of the land was located by a call from a given point, such call being: "Thence north 200 varas." The evidence was undisputed as to the beginning point of said call, itself being located by two preceding calls, the first beginning at a creek —a natural object.

The question is whether under the circumstances stated there was any such uncertainty or ambiguity in the description of the land as to warrant a finding that it was the intention of the parties that the northeast corner of the tract should be not "Thence north 200 varas" as stated in the description, but the same as if the call had been "Thence north 200 varas, plus 154.8 feet."

■ Had Wooley built his fence running west from a point 200 varas north of the point which, as said before, was located by the undisputed evidence, it is a safe assumption, we think, that no controversy would ever have arisen. If Wooley made a mistake as to the location on the ground of his north boundary line that fact would not render ambiguous the description in his deed. The intention which the law provides shall be ascertained and given controlling effect in locating a boundary line is not an intention which the description of the land fails to express, but the intention which it does express. When there is a failure to express in the description in a deed the real intention, the very instrument itself constitutes a part of the necessary proof of such failure. It would be no proof unless it expressed an intention contrary to, or different from, that which the parties intended to express. It results that since there can be no contradiction of the intention expressed, when ascertainable, the intention expressed must be given ef-

fect, regardless of the intention which it was the purpose of the parties to express, but which they failed to express.

To give effect to an intention not expressed, a different character of action is required, a predicate for which is the showing of fraud, accident, or mistake to warrant a reformation of the instrument so as to conform to the unexpressed intention.

It is said that "the intention of the parties must be gathered from the language of the deed, and where such language is plain and intelligible, it cannot be changed or varied by construction, although it is plain that it is not the description which was intended to be used." 18 C.J. p. 277, § 242. Subject to an exception not important here, it is further said, by way of deduction, from the foregoing that: "Hence a specific description cannot be extended to include property not within its terms." 18 C.J. p. 278, § 242.

Where, in applying a description to land so as to locate it on the ground, an ambiguity appears and resort must be had to rules of construction, particular means of ascertaining intention have been declared to have varying rank some being made to yield to others. But that can only be where there are different means which lead to different results, or some of the means given have been rendered unavailable, or where by application of all the means given there is manifest such conflict or inconsistency as to leave the intention still in doubt. Where, as here, the only means given for locating a corner is still available and is that it is north 200 varas from a given point, there can be no uncertainty or doubt as to the location so long as the given point remains certainly known. There exists no means other than by running course and distance, of locating the corner. Hence there can be no conflict between such means and any other. Had the call been thence north 200 varas to a point from which natural or artificial objects were located, in certain courses and at certain distances, then the call for 200 varas, if in conflict with the other means given for locating the point would be made to yield; but no other means are furnished for the call in question to yield. The point called for is fully as capable of certain location as if the call for distance was an error, but the description had furnished as other means of locating the point that it was one from which a described tree bears

N. 45 W. 10 varas. Locating the point the given course and distance from the bearing tree, would manifestly be no more definite and certain than locating it by the course and distance given in the call in question.

A call of usually the least dignity may be the means of such definite and certain location of the corners and lines of a tract of land as to be controlling, and render recourse to other means not only unnecessary but unavailable. Buie v. Miller (Tex.Civ.App.) 216 S.W. 630, 633; Ware v. Perkins (Tex.Civ.App.) 178 S.W. 846; Lipscomb v. Underwood, 7 Tex.Civ. App. 297, 27 S.W. 155. In the first case cited it was said:

"This is a case where the land should be located by course and distance, such calls being the more certain. * * *

"It is well settled that nothing passes by deed except what is described in it, whatever the intention of the parties may have been.

"While parol evidence is often admissible to ascertain what lands are embraced in the description, such evidence cannot make the deed operate upon land not embraced in the descriptive words."

No question of the rights of the parties being controlled by the principle of acquiescence or implied agreement as to the boundary line is thought to be involved. As said in Buie v. Miller, supra, "where there is no room to doubt the true location, a mere acquiescence in another line would not support a verdict in favor thereof." Besides, it is difficult for us to understand how the principle of acquiescence or agreed boundary could be successfully invoked in a case like this. That principle is freely applied to uncertainly located boundary lines between contiguous owners. In this case the owners of contiguous lands suffered judgment against them by default. The contesting defendants claim the same land as plaintiffs on the same side of the questioned boundary line. There would seem to be no room for operation of the principles mentioned.

It is our conclusion that the court below erred in peremptorily instructing the jury to return a verdict for the defendants. We are inclined to think that a peremptory instruction would have been proper if limited to the one-half mineral interest conveyed by Wooley and wife to Cameron and Tucker. However, we do not feel that we

are warranted in rendering judgment disposing of the whole controversy because of the possibility that an issue of fact may be made concerning estoppel and since that requires a remand of the case it seems advisable to remand it as a whole. It is accordingly so ordered.